**Mohammed Abed ALI d/b/a Mothers Food II, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 93–C–506.**

United States District Court,
E.D. Wisconsin.

Oct. 18, 1995.

Scott E. Hansen, Milwaukee, WI, for Plaintiff.

Thomas P. Schneider, U.S. Attorney by Charles Guadagnino, Milwaukee, WI, for Defendant.

## DECISION AND ORDER

MYRON L. GORDON, District Judge.

Plaintiff Mohammed Abed Ali commenced this action on May 20, 1993, with the filing of a complaint against the defendant. Abed Ali seeks judicial review of action taken by the Food and Nutrition Service, n/k/a the Food and Consumer Service ["FCS"], regarding the assessment of a fine against him in the amount of $106,449. A court trial was conducted from September 18, 1995, through September 21, 1995. This decision constitutes the court's findings of fact and conclusions of law pursuant to Rule 52, Federal Rules of Civil Procedure.

### I. BACKGROUND

Abed Ali is an Israeli citizen who has resided in the United States for the past six years. In late 1991, he purchased a small grocery store named Mike's Grocery in Milwaukee. He also entered into discussions with Adel Kheirieh concerning the purchase of another grocery business owned by Mr. Kheirieh's wife, Ikram Kheirieh, located at 1913 West Hadley Street in Milwaukee. The latter store is named Mothers Food II. Although Ikram Kheirieh was the owner of the store, her husband operated the business and acted as her agent in negotiations for the prospective sale of the store. Mrs. Kheirieh had previously obtained authorization to redeem food stamp coupons for Mothers Food II in December 1987.

On December 26, 1991, Abed Ali and Mr. Kheirieh entered into an agreement whereby the plaintiff would manage Mothers Food II from that date until February 27, 1992. Under the terms of the management agreement, Abed Ali paid $10,000 to Ikram Kheirieh "as security" for Abed Ali's compliance with the terms of the agreement. On December 26, 1991, they also entered into an agreement entitled "business offer to purchase." Pursuant to the terms of that agreement, the plain-

tiff offered to purchase Mothers Food II for the sum of $34,000, plus stock in trade at closing. The total purchase price listed in the agreement was $63,527.19.

Under the purchase agreement, Abed Ali paid to Ikram Kheirieh a down payment of $5,000 cash, which was tendered with the offer. The agreement states that "the buyer's obligation to conclude this transaction is conditioned upon consummation of the following:" (1) the buyer must apply for all licenses and permits necessary to operate Mothers Food II no later than January 3, 1992, and obtain all such licenses and permits no later than February 27, 1992; (2) the buyer must enter into an agreement to lease with the current landlord (Mrs. Kheirieh) on or before February 27, 1992. The contract expressly provided that time was of the essence in meeting the contractual terms.

The agreement provided for financing to Abed Ali by the seller for the purchase price less $15,000. The plaintiff was to make payments to Mrs. Kheirieh at the rate of $3,000 per month until paid in full at 8% interest, with such interest to commence one year after closing. The purchase agreement provided for closing of the transaction at the office of the plaintiff's attorney on February 27, 1992, "or at such other time and place as may be agreed in writing, but not later than 2 business days after buyer obtains all licenses under paragraph 1 above."

At trial, both Abed Ali and Mr. Kheirieh testified that the purchase agreement was never consummated. The closing, as called for under the written purchase agreement, did not take place on February 27, 1992, or at any time thereafter. The plaintiff never obtained all of the licenses and permits necessary to operate the store. However, pursuant to the terms of the management agreement, the plaintiff did agree to lease the premises from Mrs. Kheirieh for the amount of $600 per month.

Beginning in December 1991, after Abed Ali and Mr. Kheirieh entered into the management agreement, the plaintiff began to operate the store with little, if any, supervision from Mr. Kheirieh. In late January 1992, Abed Ali began making payments to Mr. Kheirieh in the amount of $3,600 per month. Such payments were made by the plaintiff with money taken from the cash register at Mothers Food II; this leads to the curious circumstance that if Mrs. Kheirieh remained the owner, Abed Ali was paying her the rent ($600.00 per month) and the monthly purchase installments ($3000.00) out of Mrs. Kheirieh's own income.

While Abed Ali was named as the manager in the December 26, 1991, management agreement, it was his brother, Fouzan Ali, who actually handled the day to day operations of the store. Although the purchase agreement was not consummated on February 27, 1992, the Alis continued to operate the store subsequent to that date.

At trial Mr. Kheirieh testified that he and Abed Ali entered into an oral agreement shortly after February 27, 1992, whereby the plaintiff would assume ownership of the store after May 31, 1992. Abed Ali testified that he never reached such an agreement with Mr. Kheirieh.

On June 19, 1992, the plaintiff, through his attorney, filed articles of incorporation with the state of Wisconsin for Ali & Ali, Inc. According to the articles of incorporation, the purpose of the corporation was "to engage in any lawful activity within the purposes for which corporations may be organized" under Wisconsin law. Abed Ali testified that he and his brother were part of the corporation. In July 1992, a food dealer license was issued for "Mohamad Abed Ali and Mohamad Fouzan Ali" at 1913 West Hadley Street from the city of Milwaukee health department. Also during that month, a seller's permit was issued to "Mothers Food 2 Ali & Ali, Inc." from the state of Wisconsin.

The plaintiff and his brother continued to accept food stamps at Mothers Food II after May 31, 1992. The food stamps were redeemed using the authorization number issued to Ikram Kheirieh, which she had obtained in 1987 authorizing her to accept food stamp coupons at the store.

In June 1992, FCS began a reauthorization process. Pursuant to that process, letters were sent to selected stores requesting that such stores fill out a new application for authorization to accept food stamp coupons.

A reauthorization letter was sent to Mothers Food II. On August 10, 1992, after receiving no response to its initial letter, FCS sent another letter to Mothers Food II requesting the completion of a new application.

After receiving no response to its August 10th letter, FCS sent a third letter to Mothers Food II on September 22, 1992, stating that due to the lack of response to its earlier letters, it assumed that the store no longer wanted to participate in the food stamp program. The letter also stated that food stamp authorization for the store would be withdrawn within ten days of the store's receipt of the letter.

However, on October 5, 1992, FCS received an application for authorization to participate in the food stamp program dated September 30, 1992, for a store named Ali & Ali, Inc., located at 1913 West Hadley Street in Milwaukee. The application stated that the store had opened for business under the ownership of Ali & Ali, Inc. on June 1, 1992. After receiving the application, a FCS employee contacted Fouzan Ali at the store to verify the transfer in ownership. Fouzan Ali verified that a transfer in ownership occurred on June 1, 1992. On October 7, 1992, FCS sent letters to Ikram Kheirieh, the "owner" of Mothers Food II, and to First Wisconsin Bank, where the Kheiriehs had a bank account for the redemption of food stamp coupons, notifying both that Mrs. Kheirieh's authorization to participate in the food stamp program for Mothers Food II was being withdrawn due to a change in ownership of the store.

At trial, Abed Ali testified that he did see the notices sent to Mothers Food II from FCS regarding reauthorization. He also testified that until early October 1992 he was not aware that his brother had submitted the application to FCS, as the plaintiff was in Israel from late August 1992 until October 8, 1992. Abed Ali stated that he told his brother that he should not have filed the food stamp application. He also testified that he called the FCS office in Madison, Wisconsin, to cancel the application, although FCS has no record of his telephone call.

Abed Ali's brother, Fouzan Ali, was not available to testify at trial, as he was visiting Israel and was unable to return from that country in time for trial. However, a transcript of Fouzan Ali's testimony at an April 13, 1994, deposition was admitted into evidence at trial. During his deposition, Fouzan Ali stated that he had a bookkeeper for the store fill out the application during his brother's absence and that he was unaware that she had written in June 1, 1992, as the date on which Ali & Ali, Inc., had assumed ownership of the store. Fouzan Ali also stated that his brother was angry that he had submitted the application.

Shortly after the filing of the application by Fouzan Ali, FCS determined that food stamp deposits were made by Mothers Food II from June 1992 through mid-October 1992. On November 5, 1992, Michael Skaer, the officer-in-charge of the FCS field office in Madison sent a letter to the Alis requesting: (1) verification of Ali & Ali, Inc.'s employee identification number; and (2) a copy of a bill of sale, a conditional sales contract, or incorporation papers that show a bona fide transfer of ownership of Mothers Food II. On January 19, 1993, in response to the letter of November 5, 1992, FCS received a copy of the letter of June 19, 1992, sent to the secretary of state of Wisconsin by the plaintiff's attorney, Michael A.I. Whitcomb, for the purpose of filing articles of incorporation for Ali & Ali, Inc. FCS also received verification of the employee identification number for Ali & Ali, Inc.

Abed Ali continued to make monthly payments of $3,600 to the Kheiriehs until at least September 1992. However, subsequent to the withdrawal of the Kheirieh's food stamp authorization in October 1992, Mr. Ali failed to make payments for some of the months between that time and January 1993.

Dionne Bertz, a FCS employee at the Madison field office, testified that she received a telephone call on January 26, 1993, from a man named "Mohammed Ali," and she advised him that FCS required a copy of the articles of incorporation for Ali & Ali, Inc. On February 1, 1993, FCS received a copy of the articles of incorporation for Ali & Ali, Inc. On February 10, 1993, Ms. Bertz received a telephone call from "Mohammed

A. Ali" regarding Mothers Food II. Mr. Ali advised her that he was changing Ali & Ali, Inc. to a sole proprietorship. She received another telephone call from "Mohammed A. Ali" on February 12, 1993, at which time he advised her that the business would not be changing to a sole proprietorship.

On February 11, 1993, Michael Skaer sent to "Mr. Mohammad F. Ali and Mr. Mohammad A. Ali, Owners Ali & Ali, Inc., 1913 West Hadley Street" a letter stating that food stamps were redeemed after June 1, 1992, in the amount of $23,483 using the authorization number of the previous owner.

Mr. Skaer testified that the plaintiff was notified by letter dated March 2, 1993, that a fine of $106,449 was being imposed upon him based upon the redemption of food stamps after June 1, 1992, for Ali & Ali, Inc. By letter dated March 11, 1993, the plaintiff, through attorney David C. Bangert, requested review of that decision by the FCS administrative review branch. Although the plaintiff asserted that he was not the owner of the store at the time of the alleged violations, the decision of the FCS field office to impose the fine was upheld by administrative review officer Richard Havnen on April 19, 1993.

In an April 22, 1993, letter, FCS notified the plaintiff's attorney that the application for authorization to participate in the food stamp program filed by Ali & Ali, Inc. on October 5, 1992, had been denied. The plaintiff sought administrative review of that action as well.

On May 20, 1993, the plaintiff commenced the present action seeking judicial review only of the decision of FCS to impose the $106,449 fine; he did not seek judicial review of the decision to deny his application. Along with its answer, the government asserts a counterclaim based upon the False Claims Act, 31 U.S.C. § 3729, contending that Abed Ali knowingly presented false or fraudulent claims for payment through his redemption of food stamp coupons after June 1, 1992.

In September 1993, subsequent to the filing of this action, the plaintiff entered into an agreement with Adel Kheirieh "to relinquish any right to the inventory and any fixtures, furniture and equipment on the premises" of Mothers Food II and to relinquish any right the plaintiff had to occupy or to possess the premises in exchange for $2,500. Pursuant to that agreement, Mr. Kheirieh also agreed to release the plaintiff from his obligation "to tender the full and final payment of the purchase price of Mothers Food II."

## II. ANALYSIS

Pursuant to 7 U.S.C. § 2023(a), a store may obtain review of a decision by the FCS to impose a civil money penalty by filing a complaint against the United States in the United States district court in which the plaintiff resides or does business, or in a state court of competent jurisdiction. Under 7 U.S.C. § 2023, "[t]he suit in the United States district court ... shall be a trial de novo by the court in which the court shall determine the validity of the questioned administrative action in issue."

The phrase "trial de novo" has been interpreted to mean that the district court reviews the factual findings of the agency de novo, but it reviews the severity of the penalty under the arbitrary and capricious standard. *See Carlson v. United States,* 879 F.2d 261, 263 (7th Cir.1989); *McGlory v. United States,* 763 F.2d 309, 311 (7th Cir.1985). In the case at bar, the plaintiff does not challenge the severity of the penalty; rather, he contends that no violation of the food stamp statutes or regulations occurred.

The Food Stamp Act was enacted in 1964 for the purpose of alleviating hunger and malnutrition among low-income households by increasing their "food purchasing power." 7 U.S.C. § 2011. Congress authorized the secretary of the United States department of agriculture ["the secretary"] to administer the food stamp program. 7 U.S.C. § 2013(a). Congress also authorized the secretary to issue regulations which are deemed necessary or appropriate to facilitate administration of the food stamp program. 7 U.S.C. § 2013(c). The department of agriculture designated the administration of the program to FCS. 7 C.F.R. § 271.3(a). FCS has enacted regulations regarding the food stamp program. *See* 7 C.F.R. §§ 271–279.

Under 7 C.F.R. § 278.1(a), anyone desiring to participate in the food stamp program must file an application with FCS. FCS may then approve or deny the application based on the standards set forth in 7 C.F.R. § 278.1(b). Retail stores that are authorized to participate in the food stamp program may accept food stamps from eligible households. 7 C.F.R. § 278.2(a).

Under the provisions of 7 U.S.C. § 2021(f), FCS may impose a fine upon a retail store which accepts food stamps without having been previously authorized to do so. The fine imposed for such action is calculated in accordance with 7 C.F.R. § 278.6(m). Under that section, the fine imposed "shall be $1,000 for each violation plus an amount equal to three times the face value of the illegally accepted food coupons." 7 C.F.R. § 278.6(m).

The fine imposed upon the plaintiff was based upon FCS' determination that Ali & Ali, Inc. had committed 36 violations between June 1, 1992, and mid-October 1992 involving food stamp coupons with a face value of $23,483. Although the fine assessed by FCS totalled $106,449, Mr. Skaer testified that a food stamp redemption certificate in the amount of $502 from May 27, 1992, had erroneously been included in calculating the fine. He stated that excluding the May 1992 redemption would decrease the fine by $2,506. Consequently, the fine must be reduced by $2,506, which results in a total fine of $103,943.

The primary issue in this case is whether ownership of Mothers Food II was transferred to the plaintiff on or before June 1, 1992. At trial, the plaintiff maintained that the fine was wrongfully assessed as he did not become the owner of Mothers Food II on or before June 1, 1992. Abed Ali claims that Ikram Kheirieh remained the owner of the store from June 1992 through October 1992 and that the food stamp coupons redeemed during that period were lawfully redeemed under Mrs. Kheirieh's authorization.

Although a formal purchase agreement was signed by both the buyer and the seller on December 26, 1991, it is clear that it was not closed at the contractual date of February 27, 1992. Both parties ignored their written contract but continued their relationship—apparently by casual, oral understandings. Whether the plaintiff became the owner of the business on or before June 1992 must be resolved by the parties' conduct and oral arrangements, rather than by their written agreements.

The plaintiff contends that any oral agreement to transfer ownership of the store is unenforceable as any such sale did not comply with the statute of frauds. Pursuant to Wis.Stats. § 401.206, a contract for the sale of personal property for the price of $5,000 or more "is not enforceable by way of action or defense" unless, among other things, there is some writing sufficient to indicate that a contract for sale was made between the parties. Under Wis.Stats. § 402.201, a sale of goods for the price of $500 or more is unenforceable "by way of action or defense" absent a writing which indicates that a contract for sale was made between the parties.

■ A sale of the store would involve a transfer of personal property in excess of $5,000 and a transfer of goods in excess of $500. However, the United States in this case is not attempting to enforce a contract "by way of action or defense." The government is instead asserting that a change in ownership occurred on June 1, 1992, regardless of the *legal* enforceability of any agreement for such a sale. Consequently, I do not believe that the absence of a written agreement regarding a transfer in ownership is fatal to the defendant's position in this case.

■ Although the plaintiff claims that he never acquired ownership of Mothers Food II, both he and the Kheiriehs took actions consistent with a transfer in ownership. Subsequent to December 1991, Abed Ali and his brother, Fouzan, operated the store with insignificant supervision by the Kheiriehs. Additionally, in January 1992, the plaintiff began paying rent to Mrs. Kheirieh for the space occupied by Mothers Food II.

During June 1992, Abed Ali created Ali & Ali, Inc., which was the entity listed on the food stamp application signed by his brother and dated September 30, 1992. In July 1992, a food dealer license was obtained from the Milwaukee health department for "Mohamad

Abad Ali & Mohamad Foazan Ali" at 1913 West Hadley Street. During that month, a Wisconsin seller's permit was issued by the state department of revenue for Ali & Ali, Inc. In August 1992, a liability insurance policy was issued for "Mothers Food # 2 DBA Mohamad F Ali."

I find that Abed Ali had complete control over the store. He was free to take proceeds from the cash register of the store to pay Mrs. Kheirieh or to pay any other obligations incurred in his operation of the store. It is fair to assume that the Kheiriehs voluntarily allowed their food stamp authorization for the store to lapse. Although the Kheiriehs did apply for a liquor license for the store in December 1992, Mr. Kheirieh testified that he did so because such licenses were difficult to obtain if they lapsed, and he was concerned that he would regain ownership of Mothers Food II due to Abed Ali's financial difficulties with the store.

In September 1993, Abed Ali and Adel Kheirieh signed an agreement in which Abed Ali relinquished his right to the store's inventory, fixtures, furniture and equipment, as well as his right to occupy or to possess the premises, and received $2500 for relinquishing such rights. If Abed Ali had never been the owner of the store, he presumably would have no right to the inventory and fixtures of Mothers Food II nor any right to occupy or to possess the premises. Both the Kheiriehs and Abed Ali took actions consistent with Abed Ali's having assumed ownership of Mothers Food II.

It is the plaintiff's burden to prove by a preponderance of the evidence that the agency's determination is factually incorrect. *Goodman v. United States*, 518 F.2d 505, 511 (5th Cir.1975); *Barbosa v. United States*, 633 F.Supp. 16, 18 (E.D.Wis.1986). The plaintiff in this case has failed to do so. Mr. Kheirieh testified that Abed Ali assumed ownership of the store on June 1, 1992. Moreover, the food stamp application filed by the plaintiff's brother supports my determination that the plaintiff became the owner on June 1, 1992. Abed Ali failed to present sufficient evidence to demonstrate that a transfer in ownership did not occur.

At trial, counsel for the plaintiff asserted that the penalty in this case should be assessed against Ali & Ali, Inc. The plaintiff contends that the fine should not be assessed against him personally, as the fine was imposed based upon the application filed on behalf of Ali & Ali, Inc.

Pursuant to 7 C.F.R. § 278.6(m), FCS may impose a fine against any "individual, sole proprietorship, partnership, corporation or other legal entity" based upon the unauthorized acceptance and redemption of food stamp coupons. The penalty letter was sent to "Mr. Mohammad A. Ali, Owner Ali & Ali, Inc." by FCS on March 2, 1993. The plaintiff personally and actively controlled the corporation. Under the applicable regulation, FCS can assess a fine against an individual or a corporation. Due to Abed Ali's degree of control over the corporation, it was proper to assess the fine against him personally. Moreover, the record forcefully establishes that it was Abed Ali who assumed ownership of the store on June 1, 1992. I am persuaded that FCS imposed the fine on the responsible party.

The government has asserted a counterclaim based upon the False Claims Act, 31 U.S.C. § 3729. Under 31 U.S.C. § 3729(a)(1), a person who knowingly presents or knowingly causes to be presented to the United States government a false or fraudulent claim for payment is liable to the government for a civil penalty of not less than $5,000 but not more than $10,000 plus three times the amount of damages which the government sustains as a result of that person's actions. Pursuant to 31 U.S.C. § 3729(b),

> the terms "knowing" and "knowingly" mean that a person, with respect to information—
>
> (1) has actual knowledge of the information;
>
> (2) acts in deliberate ignorance of the truth or falsity of the information; or
>
> (3) acts in reckless disregard of the truth or falsity of the information,
>
> and no proof of specific intent to defraud is required.

The government must prove by a preponderance of the evidence all of the essential elements of a claim under the False Claims Act. 31 U.S.C. § 3731(c); *Brooks v. United States,* 64 F.3d 251, 255 (7th Cir.1995).

■ Negligence is not actionable under the False Claims Act. *Hindo v. University of Health Sciences,* 65 F.3d 608, 613 (7th Cir.1995). " 'The requisite intent is the knowing presentation of what is known to be false.' " *Id.* (quoting *United States ex rel. Hagood v. Sonoma County Water Agency,* 929 F.2d 1416, 1420 (9th Cir.1991)). The claim presented must be a lie. *Id.*

■ I do not believe that the government has met its burden of proof with respect to its counterclaim. The defendant has not shown that Abed Ali knowingly presented to the United States false or fraudulent claims. Although the United States has adequately demonstrated that the plaintiff did present food stamp coupons for redemption without prior authorization, the government has failed to show that Abed Ali knowingly presented to the government that which he knew to be false. The plaintiff's actions do not rise to the level of culpability required under the False Claims Act. Therefore, the defendant's counterclaim will be dismissed.

### ORDER

Therefore, IT IS ORDERED that the clerk of court be and hereby is directed to enter judgment upholding the action of the United States in assessing a fine against the plaintiff.

IT IS ALSO ORDERED that the fine be and hereby is reduced to the amount of $103,943.

IT IS FURTHER ORDERED that the defendant's counterclaim be and hereby is dismissed, with prejudice.

IT IS FURTHER ORDERED that the parties be and hereby are directed to bear their own costs in connection with this action.