**Aiman GHATTAS, doing business as A & M Food Shop, Plaintiff–Appellant,**

v.

**UNITED STATES of America; Michael Espy, Secretary of Agriculture, Defendants–Appellees.**

No. 93–3867.

United States Court of Appeals, Eighth Circuit.

Submitted May 11, 1994.

Decided Nov. 15, 1994.

Rehearing Denied Dec. 15, 1994.

Edward J. Deghroony, St. Louis, MO, argued, for appellant.

Madeleine B. Cole, St. Louis, MO, argued, for appellees.

Before LOKEN, Circuit Judge, BRIGHT, Senior Circuit Judge, and HANSEN, Circuit Judge.

LOKEN, Circuit Judge.

Aiman Ghattas ("Ghattas") owns the A & M Food Shop ("A & M"), a small grocery store in St. Louis, Missouri. Thirty percent of A & M's revenues comes from food stamp purchases. During the period in question, Ghattas's father opened the store in the morning and worked until 3:00 p.m. Clerk Ghandi Owais worked alone in the store from 3:00 p.m. until it closed at 8:00 p.m. During a "sting" investigation, Owais illegally purchased discounted food stamps from an undercover agent, twice when Owais was alone in the store and twice at other locations. After the first three illegal purchases, Owais put the purchased food stamps in A & M's register and removed an equivalent amount of cash. These food stamps were eventually deposited with other A & M receipts. Owais was arrested after the fourth purchase.

Ghattas immediately fired Owais, who subsequently pleaded guilty to three felony stealing charges.

Neither Ghattas nor his father participated in or benefited from Owais's illegal activity. Nevertheless, in 1991 the Department of Agriculture's Food and Nutrition Service ("FNS"), which administers the food stamp program, charged A & M with unlawfully trafficking in food stamps [1] and permanently disqualified A & M from participating in the program. In 1988, concerned with the harshness of this sanction, Congress had amended 7 U.S.C. § 2021(b)(3)(B) to give the Secretary discretion to impose a monetary penalty. However, after an informal hearing, the Secretary's appeals officer upheld the permanent disqualification, refusing to consider an alternative monetary penalty because Ghattas did not timely request that lesser sanction. The district court affirmed. Concluding that the agency's procedural rules have frustrated congressional intent, and that the district court has a statutory duty to review this issue de novo, we reverse.

## I. The Statute.

Prior to 1982, the statute provided that an approved retail store "may be disqualified ... from further participation in the food stamp program" if it violates "any of the provisions of this chapter." The statute authorized a $5,000 monetary penalty in lieu of disqualification if disqualification would cause hardship to food stamp recipients. It left the period of disqualification to the Secretary's discretion under "regulations issued pursuant to this chapter." 7 U.S.C. § 2021 (Supp. IV 1980). The regulations provided for disqualification "for a reasonable period of time, not to exceed 3 years." 7 C.F.R. § 278.6 (1982).

Congress amended the statute in 1982 to prescribe disqualification periods for various violations. See Omnibus Budget Reconciliation Act of 1982, Pub.L. No. 97–253, § 175, 1982 U.S.C.C.A.N. (96 Stat.) 763, 781, codified at 7 U.S.C. § 2021 (1988). Concerned by increased trafficking violations, Congress "adopted a stringent requirement that a store would be permanently disqualified upon a disqualification based on trafficking." S.Rep. No. 504, 97th Cong., 2d Sess., reprinted in 1982 U.S.C.C.A.N. 1641, 1701. The Secretary then promulgated implementing regulations making permanent disqualification mandatory for trafficking violations. See 7 C.F.R. § 278.6(e)(1)(i) (1984). In response to public comments that this sanction was too harsh, FNS explained: "The Department is unable to alter the penalties since the law requires specific periods for certain violations." 49 Fed.Reg. 22055, 22056 (May 25, 1984).

■ Permanent disqualification of a store when the owner and management are innocent of an employee's trafficking is indeed a harsh sanction,[2] so harsh that the circuit courts split over whether disqualification could be imposed against a store whose owner was entirely innocent of the trafficking violation. Compare R Ranch Market Corp. v. United States, 861 F.2d 236 (9th Cir.1988), with Willy's Grocery v. United States, 656 F.2d 24 (2d Cir.1981), cert. denied, 454 U.S. 1148, 102 S.Ct. 1011, 71 L.Ed.2d 301 (1982), and Kulkin v. Bergland, 626 F.2d 181 (1st Cir.1980).[3]

1. It is undisputed that Owais's cash purchases constituted unlawful food stamp "trafficking." See 7 C.F.R. § 271.2.

2. Disqualification cuts the retailer off from a substantial number of the store's former customers. Moreover, the statute and regulations assess prohibitive fines if the owner sells the store during the period of disqualification. See 7 U.S.C. § 2021(e); 7 C.F.R. § 278.6(f)(2). In this case, for example, a local FNS director told Ghattas he would be fined $100,000 if he sold A & M. In these circumstances, permanent disqualification effectively wipes out the innocent store owner's investment.

3. Ghattas urges us to follow R Ranch and hold that a store may not be sanctioned for trafficking if the owner is entirely innocent of an employee's violation. We are arguably foreclosed from so ruling by PTF Enters., Inc. v. United States, 558 F.Supp. 1317 (W.D.Mo.), aff'd without opinion, 716 F.2d 908 (8th Cir.1983). But in any event, we agree with the Third Circuit that, under the 1988 amendments (to be discussed infra ), a store may be sanctioned despite its owner's innocence. See Freedman v. United States Dep't of Agric., 926 F.2d 252, 258–60 (3d Cir.1991).

In 1988, Congress concluded that permanent disqualification is too harsh a sanction for all trafficking violations. It again amended the trafficking sanction statute by adding:

> except that the Secretary shall have the discretion to impose a civil money penalty of up to $20,000 in lieu of disqualification ... for ... trafficking in coupons ... if the Secretary determines that there is substantial evidence that such store or food concern had an effective policy and program in effect to prevent violations....

Hunger Prevention Act of 1988, Pub.L. No. 100–435, § 344, 1988 U.S.C.C.A.N. (102 Stat.) 1645, 1664, codified at 7 U.S.C. § 2021(b)(3)(B) (1988). The legislative history explained:

> [I]nnocent persons should not be subject to the harsh penalty of disqualification where a store or concern has undertaken and implemented an effective program and policy to prevent violations.... With Secretarial discretion, we can be assured that the punishment will more closely fit the crime.

H.R.Rep. No. 828, 100th Cong., 2d Sess., pt. 1, at 28 (1988), quoted more extensively in *Freedman,* 926 F.2d at 258.

In 1990, Congress again amended 7 U.S.C. § 2021(b)(3)(B). *See* Food, Agriculture, Conservation, and Trade Act of 1990, Pub.L. No. 101–624, § 1743, 1990 U.S.C.C.A.N. (104 Stat.) 3359, 3795. One purpose of these amendments was to "expand[ ] the types of evidence that can be used to show that a fine is more appropriate than permanent disqualification." H.R.Conf.Rep. No. 916, 101st Cong., 2d Sess., *reprinted in* 1990 U.S.C.C.A.N. 4656, 5286, 5623. With these various amendments, § 2021(b)(3)(B) presently provides:

**(b) Period of disqualification**

Disqualification under subsection (a) of this section shall be—

\*   \*   \*   \*   \*   \*

(3) permanent upon—

\*   \*   \*   \*   \*   \*

(B) the first occasion or any subsequent occasion of a disqualification based on ... trafficking in coupons ... by a retail food store ... except that the Secretary shall have the discretion to impose a civil money penalty of up to $20,000 for each violation (except that the amount of civil money penalties imposed for violations occurring during a single investigation may not exceed $40,000) in lieu of disqualification ... for ... trafficking in coupons ... that constitutes a violation of the provisions of this chapter or the regulations issued pursuant to this chapter, if the Secretary determines that there is substantial evidence (including evidence that neither the ownership nor management of the store or food concern was aware of, approved, benefited from, or was involved in the conduct or approval of the violation) that such store ... had an effective policy and program in effect to prevent violations of the chapter and the regulations.

## II. The Secretary's Post–1988 Regulations.

Following adoption of the 1988 amendment conferring discretion to impose a monetary penalty in lieu of permanent disqualification, the Secretary again promulgated implementing regulations. *See* 54 Fed.Reg. 18641 (May 2, 1989). Although FNS noted Congress's concern with small and innocent offenders, *id.* at 18642–43, the regulations in many respects reflect a reluctant or hostile attitude toward the alternative monetary sanction:[4]

▪ *First,* the regulations provide that "[a] civil money penalty for hardship to food stamp households may not be imposed in lieu of a permanent disqualification," 7 C.F.R. § 278.6(f)(1), and the final agency action against A & M noted that a hardship-to-households defense is not available. But the statute provides generally that any disqualification penalty may be replaced by a money penalty "if the Secretary determines that [a store's] disqualification would cause hardship

---

4. The legislators who managed the 1990 amendments to § 2021(b)(3)(B) observed: "The Managers are concerned with the manner in which the Secretary has implemented the retailer disqualification provisions of the Food Stamp Act." H.R.Conf.Rep. No. 916, *supra,* 1990 U.S.C.C.A.N. at 5623.

to food stamp households." 7 U.S.C. § 2021(a). After the 1988 amendment to § 2021(b)(3), the plain language of § 2021(a) confers discretion to impose a monetary penalty in lieu of permanent disqualification based upon "hardship to food stamp households." The agency's contrary regulation deprives food stamp beneficiaries of a statutory exception enacted for their benefit. Even if the agency's policy decision is more wise, which we doubt, Congress's unambiguous mandate must prevail. *See Smithville R–II School Dist. v. Riley,* 28 F.3d 55, 57–58 (8th Cir.1994).

■ *Second,* the post–1988 regulations initially limited the monetary penalty alternative to stores whose owners and managers did not participate in or benefit from the trafficking violation, and then defined manager to include an employee with "financial functions that include ... closing out daily cash receipts." 55 Fed.Reg. 31809, 31812 (Aug. 6, 1990), amending 7 C.F.R. § 278.6(i). In 1990, Congress expressed its dismay at this restrictive definition:

> [T]he Managers expect the Secretary to narrow the current definition of manager to more fairly describe persons who supervise the work of other employees and who direct the activities and work assignments of store employees ... The definition should not include employees who do not have substantial supervisory responsibilities.

H.R.Conf.Rep. No. 916, *supra,* 1990 U.S.C.C.A.N. at 5623. The Secretary then amended § 278.6(i) to comply with this informal directive. *See* 57 Fed.Reg. 3909, 3912 (Feb. 3, 1992).

The final agency action in this case issued on March 2, 1992, after § 278.6(i) was amended. Yet the Secretary argues on ap-

peal that Owais was an A & M manager because he handled cash receipts. In other words, the change in the regulation merely paid lip service to the Conference Committee's edict. To clarify this aspect of the case on remand, we hold that the prior version of § 278.6(i) was an invalid interpretation of the statute.

*Third,* the statute as amended provides that only stores with effective compliance policies warrant the alternative monetary sanction. To implement that provision, the regulations require that a store seeking the lesser sanction present documentary proof of past and present policies, procedures, and a compliance training program. *See* 7 C.F.R. § 278.6(i)(1), (2). These elaborate requirements may be appropriate to measure the compliance efforts of a two-hundred-store supermarket chain. They seem unsuitable for a one-clerk store in a low income trade area.[5]

■ *Fourth,* turning to the critical issue of procedural safeguards, the regulations provide that permanent disqualification proceedings commence with an FNS charge letter to the store. *See* 7 C.F.R. § 278.6(b)(1). Within ten days, the store must notify FNS that it wishes to be considered for a civil monetary penalty *and* must submit all supporting compliance evidence. If it fails to do so, it "shall not be eligible for such a penalty." 7 C.F.R. § 278.6(b)(2)(i), (iii). In response to a public comment that this time restraint was unreasonable, the agency stated, "The Department believes that the 10–day response period is adequate to locate and copy these existing documents." 55 Fed.Reg. at 31812. Perhaps the general counsel of a supermarket chain could comply with this command in ten days, which is far shorter than the time for filing a one-paragraph notice of appeal to this court. *See* Fed.R.App.P. 4(a). We have little doubt that most sole proprietors of small grocery stores would find it virtually impossi-

---

5. In *Freedman,* FNS imposed a lesser monetary sanction based on affidavits "attesting to [the store owner's] training of employees regarding the correct procedure for handling food stamps." 926 F.2d at 254. This suggests that the agency ignores its virtually unsatisfiable regulations at its pleasure. That practice is a form of bureaucratic tyranny which conflicts with our long tradition of meaningful, independent judicial review of agency action. As the Court said in *Burlington Truck Lines, Inc. v. United States,* 371 U.S.

156, 167, 83 S.Ct. 239, 245, 9 L.Ed.2d 207 (1962), "Expert discretion is the lifeblood of the administrative process, but unless we make the requirements for administrative action strict and demanding, *expertise,* the strength of modern government, can become a monster which rules with no practical limits on its discretion." *See also Bureau of Alcohol, Tobacco & Firearms v. FLRA,* 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983).

ble to locate and hire an attorney who could master this area of the law and gather and file the necessary materials in ten days. Once again, the FNS regulations dramatically skew the administrative process to the disadvantage of small business. Thus, this agency procedural rule is arbitrary and capricious in that the agency "entirely failed to consider an important aspect of the problem." *Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983).

Because this procedural rule only governs a store's initial response to the FNS charge letter, its unreasonable ten-day time limit would not be of great concern if the innocent store owner retained a later opportunity to urge the agency's ultimate decision-maker to impose a lesser monetary sanction. When FNS imposes permanent disqualification, the store owner may seek informal administrative review by a food stamp review officer, whose determination is the final agency action. *See* 7 C.F.R. § 279.3(b). The regulations regarding requests for review do not appear to limit the issues the aggrieved store owner may raise. *See* 7 C.F.R. § 279.5–.6. However, in his letter decision sustaining the FNS permanent disqualification of A & M, the food stamp review officer stated:

> Your client was advised of this [alternative sanction] in the [charge] letter of December 5, 1991 from the Field Office which also advised him that documentation of eligibility for that alternative sanction was to have been provided within a specific time limit. Having received no request for the alternative penalty, and in the absence of any documentation to support that possibility, a civil money penalty *was not considered* in lieu of permanent disqualification. Based on my review of the record, this decision is sustained as appropriate.... It might also be added [that] a civil money penalty in lieu of permanent disqualification cannot be imposed based on hardship to households in the area.

(Emphasis added.) In other words, relying upon an unfair procedural time limit, the Secretary refused at all stages of the administrative process even to consider exercising the discretion Congress conferred in the 1988 amendment to the statute. We must next consider our standard for reviewing this agency action.

## III. The Standard of Judicial Review.

■ The food stamp program statute does not require FNS to hold an adjudicatory hearing before permanently disqualifying a store. *See* 7 U.S.C. § 2023(a). FNS has elected to proceed by informal agency action. *See* 7 C.F.R. §§ 279.7(c), 279.8(c). As is often the case when it authorizes informal agency action, Congress has provided for a heightened standard of judicial review:

> If the store ... feels aggrieved by such final determination, it may obtain judicial review thereof by filing a complaint against the United States in the United States court for the district in which it resides or is engaged in business.... *The suit in the United States district court ... shall be a trial de novo by the court in which the court shall determine the validity of the questioned administrative action....*

7 U.S.C. § 2023(a) (emphasis added). Review de novo means "the court should make an independent determination of the issues." *United States v. First City Nat'l Bank of Houston,* 386 U.S. 361, 368, 87 S.Ct. 1088, 1093, 18 L.Ed.2d 151 (1967). De novo review was part of the statute as initially enacted. *See* Food Stamp Act of 1964, Pub.L. No. 88–525, § 13, 1964 U.S.C.C.A.N. (78 Stat.) 800, 805.

Before the 1988 amendments, there were conflicting views as to whether the de novo review contemplated by § 2023(a) was limited to whether the store violated the act, or included review of the Secretary's disqualification penalty. *See* the various opinions in *Cross v. United States,* 512 F.2d 1212 (4th Cir.1975) (en banc). This court followed the Fourth Circuit majority in *Cross,* holding that the sanction imposed by the Secretary is reviewable, but only under the more deferential arbitrary and capricious standard. *See Studt v. United States,* 607 F.2d 1216, 1218 (8th Cir.1979). Legislative history from the era before permanent disqualifications supported this decision not to review the Secretary's choice of sanction de novo. *See Broad St. Food Mkt., Inc. v. United States,* 720 F.2d 217, 219–20 (1st Cir.1983).

In this case, the Secretary urges us to reject even the deferential standard of re-

view adopted in *Studt,* and to follow the Sixth Circuit's recent decision that "the severity of the sanction is not open to review." *Goldstein v. United States,* 9 F.3d 521, 523 (6th Cir.1993). Leaving aside the question whether we may reject our prior decision in *Studt,* we decline to follow *Goldstein,* which in our view is contrary to the plain meaning of the statute.

The more difficult question is whether the de novo standard of review should apply to the Secretary's decision not to impose the lesser monetary sanction authorized by the 1988 and 1990 amendments. This is not simply a question of whether to impose a one-year as opposed to a sixty-day disqualification, the issue in *Studt.* This is the question whether the Secretary has obeyed Congress's directive to make a less harsh *type* of sanction available to innocent store owners. That question is a crucial facet of what the court is required to review under § 2023(a), "the validity of the questioned administrative action." Given the plain meaning of § 2023(a), reinforced by our view that the Secretary's compliance with the 1988 and 1990 amendments has been grudging, at best, we conclude that the decision whether to impose an alternative monetary sanction under § 2021(b)(3)(B) must be reviewed de novo.[6]

### IV. Resolving This Appeal.

■ When Ghattas filed his ten-day response to the FNS charge letter, he protested his (A & M's) innocence but did not specifically urge that a monetary penalty be imposed in lieu of permanent disqualification should this defense be rejected. Based upon that mistake under the Secretary's procedural regulations, the FNS' initial decision-makers, the FNS food stamp review officer, and the district court have *refused to consider* Ghattas's subsequent contention that he is an innocent store owner who warrants a lesser sanction under the 1988 and 1990 amendments. By these rulings, the agency has improperly applied its procedural regulations to abdicate its responsibility to exercise the discretion Congress has delegated. *See Oberstar v. Federal Deposit Ins. Corp.,* 987

F.2d 494, 504–05 (8th Cir.1993); *Dalton v. United States,* 816 F.2d. 971 (4th Cir.1987) (Secretary may not by internal memorandum decline to exercise monetary penalty discretion). And the district court has failed to review de novo that aspect of this informal agency action which is most essential to ensuring, in the words of Congress, "that the punishment will more closely fit the crime."

For the foregoing reasons, the judgment of the district court is reversed and the case is remanded for further proceedings consistent with this opinion. The district court will have discretion on remand, at the Secretary's request, to remand the case for further administrative proceedings addressing the alternative monetary sanction issue. If the case is not remanded to the agency, the district court will proceed to consider the alternative sanction issue de novo. With the statute and regulations construed in this fashion, Ghattas's contention that A & M's permanent disqualification violates his due process rights is without merit. *See McGlory v. United States,* 763 F.2d 309, 312 (7th Cir.1985); *Cross,* 512 F.2d at 1217–18.

---

6. However, we would reverse the permanent disqualification order in this case under the arbitrary and capricious standard as well.