James **HAYNES,** d/b/a **Greg & Jim's Mercantile, Plaintiff,**

v.

**UNITED STATES of America, THROUGH the FOOD AND NUTRITION SERVICE, an agency of the United States Department of Agriculture, Defendant/Counter–Plaintiff,**

v.

James **HAYNES,** d/b/a **Greg & Jim's Mercantile, Counter–Defendant.**

No. **H–C–95–64.**

United States District Court, E.D. Arkansas, Northern Division.

Dec. 21, 1995.

W. Frank Morledge, Forrest City, AR, for James Haynes.

William C. Adair, Jr., U.S. Attorney's Office, Eastern District of Arkansas, Little Rock, AR, for Department of Agriculture, Food and Nutrition Service.

## MEMORANDUM OPINION AND ORDER

MOODY, District Judge.

Plaintiff, James Haynes, brings this action pursuant to Title 7 U.S.C. § 2023 for review of the decision of defendant, United States of America, through the Food and Nutrition Service of the Department of Agriculture (FNS), to permanently disqualify plaintiff from participation in the Food Stamp Program based on the agency's finding that plaintiff had participated in illegal trafficking of food stamps and other transactions violative of the provisions of the Food Stamp Act.

Defendant brings a counter-claim under the False Claims Act, Title 31 U.S.C. § 3729(a)(1)-(a)(3)(Supp. VI 1986), seeking damages and penalties for plaintiff's alleged acts of fraud against the government through redemption of food stamps obtained by illegal trafficking.

Pursuant to the court trial held on November 2, 1995, the Court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiff/Counter–Defendant James Haynes is the owner[1] of a general store, Greg & Jim's Mercantile (Greg & Jim's or "the store"), which sells food and merchandise. Beginning in 1986, and at all times relevant to this action, Mr. Haynes was authorized to participate as a retail grocer in the FNS's Food Stamp Program.

Sometime in or about 1990, Mr. Haynes ceased active involvement in the operation of Greg & Jim's, relinquishing management of the business to his mother, Evelyn Haynes, and his aunt, Hazel Gray Conlee. Despite Mr. Haynes's lack of active involvement in the operation of the store, the authorization to participate as a retail grocer in the Food Stamp Program remained, at all times relevant to this action, in the name of Mr. Haynes.

During 1994, the FNS conducted a formal investigation to assess Greg & Jim's compliance with federal law and regulations governing the Food Stamp Program. The investigation was conducted under the supervision of Jan Fleming, with the assistance of Shurnell Boyd, a part-time undercover investigative aide. The 1994 investigation resulted in the following charges of wrongdoing being lodged against plaintiff/counter-defendant Mr. Haynes, d/b/a Greg & Jim's:

a) That on June 15, 1994, an employee subsequently identified by Ms. Fleming as co-manager Evelyn Haynes, assisted by an employee subsequently identified by Ms. Fleming as co-manager Hazel Gray Conlee, purchased $65.00 in food stamps for $50.00 in cash, in violation of federal law and regulations governing the Food Stamp Program;

b) That on July 12, 1994, an employee subsequently identified by Ms. Fleming as co-manager Hazel Gray Conlee purchased $65.00 in food stamps for $50.00 in cash, in violation of federal law and regulations governing the Food Stamp Program;

c) That on August 8, 1994, an employee subsequently identified by Ms. Fleming as co-manager Hazel Gray Conlee charged sales tax in the amount of $.56 on eligible items purchased with food stamps, in violation of federal law and regulations governing the Food Stamp Program; and

d) That on October 6, 1994, an employee subsequently identified by Ms. Fleming as co-manager Hazel Gray Conlee accepted food

---

**1.** Acknowledging Mr. Haynes's claims that he has essentially relinquished control of the subject general store to his mother and aunt without exchange of consideration, the Court makes reference to him as the "owner" of the store since he remains listed as the owner on documentation submitted in support of his application for a license to participate in the Food Stamp Program and, therefore, is the owner of the store for the purposes of this action.

stamps for ineligible items and purchased $130.00 in food stamps for $100.00 in cash, in violation of federal law and regulations governing the Food Stamp Program.

By way of letter dated December 13, 1994 (hereinafter referred to as "charge letter"), plaintiff/counter-defendant Mr. Haynes was notified by defendant/counter-plaintiff FNS of the charges against him. Mr. Haynes was informed that the sanction for the trafficking charges would be permanent disqualification, unless he submitted a timely request, and evidence in support of such a request, for an alternative civil money penalty as authorized under 7 C.F.R. § 278.6(i) (promulgated to implement 7 U.S.C. § 2021(b)(3)(B)), for stores having an effective prevention policy in place at the time of alleged violations. Mr. Haynes was informed that any response to the charges and any request and supportive documentation for a civil money penalty would have to be submitted within ten (10) days of his receipt of the charge letter in order to be eligible for consideration by the FNS.

By way of letter dated December 20, 1994, the FNS granted plaintiff/counter-defendant's request for an extension of time within which to respond to the charges lodged against him, but specified that no extension of time would be given for requesting an alternative civil money penalty or submitting documentation in support of such a request. Thus, the letter specified that any request for consideration of an alternative money penalty and supportive documentation would be due by December 26, 1994, ten (10) days after Mr. Haynes's receipt of the charge letter. The FNS subsequently further extended Mr. Haynes's time for responding to the charges, resulting in a final due date of January 9, 1995; however, the agency again stipulated that said extension would not apply to the opportunity to request or submit documentation in support of consideration for a civil money penalty.

On December 23, 1994, Mr. Haynes, through his attorney, made an initial response to the charge letter of the FNS, requesting the imposition of a civil money penalty in lieu of permanent disqualification. Without submitting documentation in support

of the letter, Mr. Haynes argued that the store qualified for a civil money penalty under § 278.6(i), the "effective prevention policy" exception to permanent disqualification. Mr. Haynes further responded to the charge letter in a letter dated January 9, 1995, controverting the charges.

On February 3, 1995, the FNS issued a determination finding that the above-mentioned violations did, in fact, occur. The agency commented that plaintiff/counter-defendant had failed to provide required documentation in support of his request for a civil money penalty and stated its finding that plaintiff/counter-defendant failed to meet the criteria for an alternative money penalty under § 278.6(i), the "effective prevention policy" exception. Therefore, the agency denied Mr. Haynes's request for imposition of an alternative civil money penalty and notified plaintiff/counter-defendant that Greg & Jim's, under the ownership of Mr. Haynes, would be permanently disqualified from participation in the Food Stamp Program. The letter further notified Mr. Haynes of the FNS's claim for repayment of $264.19 alleged to have been the subject of a false claim, for redemption of illegally obtained food stamps, submitted to the agency.

Plaintiff/counter-defendant made a timely request for administrative review of the FNS's findings of fact with regard to the charges against plaintiff/counter-defendant, the decision not to impose an alternative civil money penalty, the decision to permanently disqualify plaintiff/counter-defendant from participation in the Food Stamp Program, and the claim for repayment of $264.19. By way of letter dated April 5, 1995, Mr. Haynes submitted information to the Administrative Review Officer in support of his request for a review of the FNS's findings. This information included statements from residents in the Colt, Arkansas area averring that disqualification of Greg & Jim's under the Food Stamp Program would cause a hardship to households, a statement of policy and training outline for Greg & Jim's, and a statement signed by Mr. Haynes as the owner of Greg & Jim's.

The April 5th letter admitted that the formal compliance policy and outline for train-

ing were not in place prior to the dates of the alleged violations, but had been adopted and implemented subsequent to the complained of occurrences.

On May 4, 1995, the Administrative Review Officer of defendant/counter-plaintiff issued a letter of determination with regard to the agency's review of plaintiff/counter-defendant's case. The officer concluded that the charges against Mr. Haynes's store were valid and warranted permanent disqualification from the Food Stamp Program. The officer determined that plaintiff/counter-defendant was ineligible for an alternative money penalty under 7 C.F.R. § 278.6(f) (promulgated to implement 7 U.S.C. § 2021(a)), the "hardship to households" exception to disqualification, due to a stipulation in the agency regulation, 7 C.F.R. § 278.6(f)(1), specifying that "a civil money penalty may not be imposed in lieu of a permanent disqualification." The officer further determined that plaintiff/counter-defendant did not qualify for a civil money penalty under 7 C.F.R. § 278.6(i), the "effective prevention policy" exception to permanent disqualification, because the store did not have an effective prevention policy in place prior to the alleged trafficking violations. Thus, the review officer sustained both the permanent disqualification and the assessment of the $264.19 fiscal claim against Mr. Haynes.

Mr. Haynes subsequently filed the instant complaint for judicial review of the administrative decision, and the FNS counterclaimed for damages and penalties resulting from Mr. Haynes's alleged acts of fraud. This Court has jurisdiction of Plaintiff's complaint pursuant to Title 7 U.S.C. § 2023. The Court has jurisdiction of the counterclaim pursuant to Titles 28 U.S.C. § 1345 and 31 U.S.C. § 3729. Venue is proper in this District pursuant to Titles 28 U.S.C. 1391 and 31 U.S.C. 3730.

### I. Judicial Review of the Agency's factual findings

■ Title 7 U.S.C. § 2023 provides for a trial *de novo* by the district court to determine the validity of an agency action disqualifying a retailer from participation in the Food Stamp Program. 7 U.S.C. § 2023(a). The *de novo* review applies to the factual basis of the agency's determinations. At trial, evidence in the administrative record may be considered; however, no presumption of correctness is given to the agency's finding of a violation. *McGlory v. U.S.*, 763 F.2d 309, 311 (7th Cir.1985)(district court must decide validity of agency's factual determinations, i.e. whether a violation occurred, anew, on a fresh record); *Redmond v. U.S.*, 507 F.2d 1007, 1012 (5th Cir.1975)(statute provides the aggrieved food store with an opportunity to introduce evidence outside the administrative record).

> The Act's de novo review provides a wider scope of review than the "substantial evidence" standard found in the Administrative Procedure Act ... (cites omitted). "As a result, the district court 'must reach its own factual and legal conclusions based on the preponderance of the evidence, and should not limit its consideration to matters previously appraised in the administrative proceedings.'"

*Pena v. U.S. Dept. of Agriculture, Food and Nutrition Service*, 811 F.Supp. 419, 422 (E.D.Ark.1992) (citations omitted).

■ The retailer bears the burden of proving, by a preponderance of the evidence, that the agency action was invalid, i.e., that the violations did not occur. *Redmond v. U.S.*, 507 F.2d 1007, 1012 (5th Cir.1975); *Pena*, 811 F.Supp. at 422; *Rorex v. U.S.*, 661 F.Supp. 406, 407 (E.D.Ark.1987).

Plaintiff/counter-defendant argues that the better approach is to place the burden on the agency to establish the affirmative proposition that the violations occurred. The Fifth Circuit, in *Redmond*, considered the prospect of placing the burden of proof upon the government, but declined to do so. *Redmond*, 507 F.2d at 1012. In holding that the burden properly rests with the retailer, the court agreed with the district court's reasoning that an aggrieved store owner:

> may not proceed as if agency determination had never occurred....
>
> \*  \*  \*  \*  \*  \*
>
> [T]he Court cannot say this administrative record is entitled to no weight whatever. It is entitled to some weight. [The grocer is] free to rebut it, [the grocer is] free to

overcome it, but if [the grocer] put[s] on no evidence, then the record would be enough to justify the Court in upholding an administrative action.

*Id.* This Court agrees with the logic of *Redmond* and the well-established rule that the burden rests, at all times, with the retailer.

Based upon a *de novo* review of the facts in issue, the Court finds that the plaintiff has failed to prove by a preponderance of the evidence that the FNS's determination that violations of the Act occurred is invalid.

■ At trial, the parties presented conflicting testimony as to whether violations occurred. Plaintiff/counter-defendant presented the testimony of Ms. Haynes and Ms. Conlee, who both denied ever having bought food stamps or otherwise violated the act, with the exception of inadvertent ringing of sales tax on some food stamp transactions.[2]

The FNS presented the testimony of Ms. Fleming and Ms. Boyd, who explained the progress of the investigation against Greg & Jim's and described the specific instances of alleged violations with reference to incident reports which had been recorded by the investigators immediately after each incident.

The Court finds both sides' witnesses to be equally credible. Ms. Haynes and Ms. Conlee appeared to be truthful in their denials of any wrongdoing; as did the government's investigators in their contradictory accounts of specific instances of alleged violations.

Ms. Haynes's and Ms. Conlee's testimony was self-serving in that denials are certainly in their best interests. Furthermore, their testimony consisted of general denials—neither woman specifically addressed the instances in which Ms. Boyd was alleged to have come into the store to transact business in order to refute the details of the events.

On the other hand, Ms. Boyd had very little independent recollection of the occurrences and had to rely on notes made by Ms. Fleming and herself in the course of the investigation in relating details of the events. However, the Court does not find this fact

incredible, given her background and level of education. The Court cannot point to any particular factor lending doubt to her testimony. Moreover, the Court credits Ms. Fleming's testimony with regard to the conduct of the investigation.

Plaintiff/counter-defendant argues that Ms. Fleming's testimony is unreliable because she did not actually witness the alleged violative transactions; she merely watched Ms. Boyd enter the store and accepted her version of the facts upon her return to the car. Plaintiff/counter-defendant asserts that this, coupled with the fact that several prior investigations of Greg & Jim's yielded no charges of wrongdoing, detracts from the agency's case. The Court finds that Ms. Fleming's testimony that she always accompanied Ms. Boyd to the store, supplied her with a precise number of food stamps, observed her entering the store, collected the proceeds from the sales of the food stamps after Ms. Boyd's return to the car, recorded the events as Ms. Boyd described each incident afterwards, and later verified the identities of persons involved in the alleged transactions by visiting the store personally corroborates Ms. Boyd's version of the facts. No evidence has been presented to indicate that Ms. Boyd had motive to or did fabricate the details of the transactions she described and, as noted above, the Court cannot point to any factor tending to discredit Ms. Boyd's version of the facts. Without more, the fact that previous investigations failed to uncover violations does not necessarily refute these specific allegations of misconduct. Any number of factors could have contributed to the lack of wrongdoing in prior instances.

Plaintiff/counter-defendant further argues that the FNS's failure to track the redemption of the particular food stamps alleged to have been the subject of the violative transactions and the failure to offer said food stamps into evidence, along with the agency's failure to offer into evidence the currency alleged to have been received in exchange for the food stamps, weakens the case made by

---

2. The witnesses explained that, in the absence of prior knowledge that items would be paid for with food stamps, sales tax would occasionally be rung by the cashier, and reflected on the register receipt, of a food stamp transaction; however, upon presentation of the food stamps, the clerk would refund the sales tax to the customer.

the defendant/counter-plaintiff. It is true that presentation of hard documentary evidence would strengthen the agency's case. However, it is not the agency, but the plaintiff, that bears the burden of proof in this Court's review of the administrative action. Plaintiff must show, by a preponderance of the evidence, that the violations did *not* occur, as alleged.

The Court finds the evidence in this case to be equally balanced. Thus, plaintiff has not sustained his burden of proof, and the Court must affirm the agency's factual finding of violations.

## II. Judicial Review of the Sanction Imposed

█ Having determined that the violations occurred, the Court must next review the sanction imposed. Normally, where no discretionary provisions of the Food Stamp Act authorizing civil money penalties as alternative sanctions are implicated, such a review is performed under an arbitrary and capricious standard. *Studt v. U.S.,* 607 F.2d 1216, 1218 (8th Cir.1979)(adopting majority view that the *de novo* standard applies only to first prong of review and holding that the court must "limit its review [in the second prong] to a determination of whether the sanction imposed on the violator is arbitrary or capricious"). However, where discretionary provisions authorizing alternative monetary sanctions are implicated, the court must review the specific issue of the agency's decision whether to impose an alternative monetary penalty *de novo. Ghattas v. U.S.,* 40 F.3d 281, 287 (8th Cir.1994).

Two discretionary provisions of the Food Stamp Act authorizing alternative civil monetary penalties are implicated in plaintiff/counter-defendant's case. At various stages of the administrative proceedings, plaintiff/counter-defendant requested consideration for a civil monetary penalty, in lieu of permanent disqualification, under each of the two provisions.

The first provision, 7 U.S.C. § 2021(a), provides that:

> Any approved retail food store or wholesale food concern may be disqualified for a specified period of time from further par-

ticipation in the food stamp program, *or subjected to a civil money penalty of up to $10,000 for each violation if the Secretary determines that its disqualification would cause hardship to food stamp households,* on a finding, made as specified in the regulations, that such store or concern has violated any of the provisions of this chapter or the regulations issued pursuant to this chapter.

*Id.* (Emphasis supplied).

The second provision, 7 U.S.C. § 2021(b)(3)(B), provides that:

> [*Disqualification under subsection (a) of this section shall be permanent upon]* the *first occasion* or any subsequent occasion of a disqualification *based on the purchase of coupons or trafficking in coupons ...,* except that the Secretary shall have the discretion to impose a civil money penalty of up to $20,000 for each ... violation ... in lieu of disqualification under this subparagraph, ... if the Secretary determines that there is substantial evidence (including evidence that neither the ownership nor management of the store or food concern was aware of, approved, benefited from, or was involved in the conduct or approval of the violation) *that such store or food concern has an effective policy and program in effect to prevent violations of the chapter and the regulations[.]*

*Id.* (Emphasis supplied).

The FNS declined, under either provision of the Food Stamp Act, to impose a monetary penalty for plaintiff/counter-defendant's alleged trafficking violations and instead imposed permanent disqualification. The Court must review the agency's decisions in this regard under a *de novo* standard of review. *Ghattas,* 40 F.3d at 287.

█ As to the FNS's decision not to impose a monetary penalty in lieu of permanent disqualification, as authorized under § 2021(b)(3)(B), the "effective prevention policy" exception to permanent disqualification, the Court, after a *de novo* review, finds that the agency properly declined to award an alternative sanction under this provision.

The agency's consideration of Mr. Haynes's request for an alternative penalty

under this provision was flawed in that, pursuant to FNS regulations promulgated to implement the provisions of the Food Stamp Act, the agency allowed Mr. Haynes only ten (10) days to submit a request and supportive documentation for consideration for the alternative sanction. *Ghattas,* 40 F.3d at 285–86. As the Eighth Circuit held in *Ghattas,* the agency's procedural time limit for requesting alternative sanctions and submitting supporting documentation frustrates the intent of Congress in enacting the exception to provide a more lenient sanction for innocent store owners.[3]

However, here as opposed to the case in *Ghattas,* plaintiff/counter-defendant did request consideration for the monetary penalty within the 10–day limit. Plaintiff/counter-defendant did not submit the required documentation within that time frame,[4] but the agency, nevertheless, considered whether plaintiff was eligible for an alternative monetary sanction under § 2021(b)(3)(B), coming to the conclusion that the store did not qualify for this exception. *See* Joint Ex. 1, February 3, 1995 Initial FNS Determination (commenting on Mr. Haynes's failure to timely submit documentation but, nevertheless, finding that the store did not meet the criteria for the alternative penalty); Joint Ex. 1, May 4, 1995 Determination of Administrative Review Officer (stating: "[S]ince your client did not have [an] effective prevention policy in place prior to the trafficking violations, the firm does not qualify for a civil money penal-

ty in lieu of permanent disqualification under Part 278.6(I) of program regulations.").

The agency's decision not to impose an alternative penalty under the "effective prevention policy" exception should be affirmed. Plaintiff/counter-defendant admits that he had no formal prevention policy *already in place* at the time of the alleged violations. Furthermore, although plaintiff asserts his own innocence of the alleged violations, the perpetrators in this case were the managers—and, according to plaintiff, the *de facto* owners—of the store. Thus, it cannot be said, in support of applying this exception for an alternative penalty, that neither ownership nor management participated in or benefited from any violations.

■ The FNS's decision not to impose an alternative monetary penalty under § 2021(a), the "hardship to households" exception to disqualification, however, should be reversed. The Court, after a *de novo* review, finds that the agency failed to properly consider plaintiff/counter-defendant's eligibility for a penalty under this exception.

Despite Mr. Haynes's submission of statements of hardship from members of the community, the FNS refused to consider an alternative monetary penalty for plaintiff/counter-defendant under § 2021(a), based on an agency regulation providing that "[a] civil money penalty may not be imposed in lieu of a permanent disqualification." *See* Joint Ex. 1, May 4, 1995 Determination of Administrative Review Officer (citing

---

**3.** In *Ghattas,* the FNS imposed permanent disqualification upon the plaintiff/store owner without ever considering an alternative monetary penalty under § 2021(b)(3)(B) due to the plaintiff's failure to request the lesser sanction by its 10–day deadline. The district court affirmed after a review of the sanction under the arbitrary and capricious standard.

The Eighth Circuit reversed and remanded the case for a *de novo* review of the decision with regard to alternative sanctions, stating: [T]he regulations provide that permanent disqualification proceedings commence with an FNS charge letter to the store. Within ten days, the store must notify FNS that it wishes to be considered for a civil monetary penalty and must submit all supporting compliance evidence. If it fails to do so, it "shall not be eligible for such a penalty."... We have little doubt that most sole proprietors of small grocery stores would find it virtually

impossible to locate and hire an attorney who could master this area of the law and gather and file the necessary materials in ten days. Once again, the FNS regulations dramatically skew the administrative process to the disadvantage of small business. Thus, this agency procedural rule is arbitrary and capricious....

... [R]elying upon an unfair procedural time limit, the Secretary refused at all stages of the administrative process even to consider exercising the discretion Congress conferred in the 1988 amendment to the statute.

*Id.* at 285–86 (citations omitted).

**4.** Plaintiff/counter-defendant later, in the April 5th letter from his attorney, admitted that this was due to the fact that no documentation existed at that time.

§ 278.6(f) of the USDA regulations, as prohibiting substitution of a civil money penalty for permanent disqualification).

In *Ghattas,* the FNS similarly refused to consider an alternative penalty for the store owner under § 2021(a)'s "hardship to households" exception, due to the same agency regulation cited in the instant case. In reversing the district court's affirmation of the agency action, the Eighth Circuit determined that the agency's regulations conflicted with the Act's "hardship-to-households" provision for alternative penalties, stating:

> [T]he [agency's implementing] regulations in many respects reflect a reluctant or hostile attitude toward the alternative monetary sanction:
>
> First, the regulations provide that "[a] civil money penalty for hardship to food stamp households may not be imposed in lieu of a permanent disqualification," 7 C.F.R. § 278.6(f)(1), and the final agency action against A & M noted that a hardship to households defense is not available. But the statute provides *generally* that any disqualification penalty may be replaced by a money penalty "if the Secretary determines that [a store's] disqualification would cause hardship to food stamp households." 7 U.S.C. § 2021(a). After the 1988 amendment to § 2021(b)(3), the plain language of § 2021(a) confers discretion to impose a monetary penalty in lieu of permanent disqualification based upon "hardship to food stamp households." *The agency's contrary regulation deprives food stamp beneficiaries of a statutory exception enacted for their benefit. Even if the agency's policy decision is more wise, which we doubt, Congress's unambiguous mandate must prevail.*

*Ghattas,* 40 F.3d at 284–85 (Emphasis supplied).

The FNS made no determination on the merits with regard to plaintiff/counter-defendant's eligibility for an alternative monetary penalty under the "hardship-to households" exception. Here, as in *Ghattas,* the agency "improperly applied its procedural regulations to abdicate its responsibility to exercise the discretion Congress has delegated." *Id.* at 287. As such, the Court concludes that the agency's imposition of permanent disqualification should be vacated and the case should be remanded to the agency for further administrative proceedings addressing plaintiff/counter-defendant's request for an alternative monetary sanction under § 2021(a).[5]

### III. Counter-claim under the False Claims Act

Acquiring, possessing and presenting illegally obtained food stamps for redemption are violations of the False Claims Act, 31 U.S.C. § 3729 *et seq., provided that these actions are done "knowingly".* "Knowingly" is defined by the False Claims Act as meaning that a person, with respect to information:

> (1) has actual knowledge of the information;
>
> (2) acts in deliberate ignorance of the truth or falsity of the information; or
>
> (3) acts in reckless disregard of the truth or falsity of the information.

31 U.S.C. § 3729(b). "No proof of specific intent to defraud is required." *Id.* As counter-plaintiff on this claim, the government has the burden of proof.

■ Based on the evidence adduced at trial, plaintiff/counter-defendant has not been shown to have "knowingly" acquired, possessed or redeemed illegally obtained food stamps. Although Mr. Haynes admits to being the person responsible for redeeming food stamps for the store and admits to not having any unredeemed food stamps at the store, the FNS has presented no direct evidence that Mr. Haynes ever acquired, possessed or redeemed illegally obtained food stamps.

Moreover, the government has presented no evidence that Mr. Haynes had actual knowledge that any food stamps were illegally obtained or that he deliberately "turned

---

**5.** The Court notes that it would reach the same conclusion even under an arbitrary and capricious standard. The agency's implementing regulations are arbitrary and capricious in that they run counter to Congress's mandate in generally providing for an alternative monetary penalty in lieu of disqualification where a hardship to households is found to exist.

his back" to keep from learning of any misdeeds. At most, plaintiff/counter-defendant could be said to have been negligent in failing to more closely monitor the store's compliance with the Food Stamp Act since his name remained on the license despite his lack of further involvement in running the store. Nonetheless, any negligence on his part would not rise to the level of "reckless disregard." Given that the store is run by his mother and aunt, it is conceivable that Mr. Haynes would not have felt the need to monitor the business as closely as he might otherwise have done.

The Court concludes that the FNS should not recover on its counterclaim under the False Claims Act.

## CONCLUSION

Based on the foregoing, judgment will be entered vacating the FNS's imposition of permanent disqualification of plaintiff/counter-defendant from the Food Stamp Program and remanding the case to the FNS for determination of plaintiff's eligibility for an alternative monetary sanction under 7 U.S.C. § 2021(a). Judgment will be entered in favor of Mr. Haynes' on the FNS's counterclaim under the False Claims Act.