**Alfredo Chavez LOPEZ and Guadalupe Lopez, dba Chavez Meat Market, Plaintiffs,**

v.

**UNITED STATES of America, and Dan Glickman, Secretary of the U.S. Department of Agriculture, Defendants.**

**No. C–95–4350 CAL.**

United States District Court,
N.D. California.

Jan. 28, 1997.

Patricia A. Murphy, Patricia A. Murphy Law Offices, San Francisco, CA, for Plaintiffs.

Mary Beth Uitti, Assistant U.S. Attorney, San Francisco, CA, for Defendants.

## ORDER FOR SUMMARY JUDGMENT

### I

LEGGE, District Judge.

Plaintiffs Alfredo and Guadalupe Lopez are the owners of Chavez Meat Market in Newark, California. In January 1994 Alfredo Lopez applied to the Food and Consumer Service (formerly known as the Food and Nutrition Service and hereinafter as "FCS" or "the agency") to participate in the Food Stamp Program. Chavez Meat Market was then authorized by the government to accept food stamps for certain items and to redeem them for their face value from the government.

Between January 19, 1995 and April 18, 1995, the agency conducted routine investigations to ascertain whether the store was complying with the program requirements. The agency made three investigatory visits to the store. On the first visit, an investigator's aide used food stamps to purchase eight items including fabric softener, toilet paper, and detergent, ineligible items under the program. 7 U.S.C. § 2012(g). On the second visit Alonzo Lopez, the owners' son, sold the aide the ineligible items fabric softener, paper towels, and detergent. Raphael Pena, another clerk, also purchased food stamps with a face value of sixty-five dollars for thirty dollars in cash that he took from his wallet. On the third and last investigative shopping trip, Alonzo Lopez purchased sixty-five dollars worth of food stamps for forty dollars cash taken from the register, and also sold ineligible items for food stamps.

On June 6, 1995, the agency sent plaintiffs a certified letter informing them of the results of the investigation. The letter informed plaintiffs that because their employees had trafficked[1] in food stamps their market could face permanent disqualification. The letter further informed plaintiffs that the regulations allow for a civil money penalty, instead of disqualification, if plaintiffs can show that they had an effective policy and program to prevent violations in effect at the time of the violations. The agency enclosed a copy of the regulations, which also included the following caution, as required by 7 C.F.R. § 278.6(b)(1): *"YOU MUST SUBMIT YOUR REQUEST FOR A CIVIL MONEY PENALTY, AS WELL AS THE REQUIRED DOCUMENTATION, TO THIS OFFICE WITHIN 10 DAYS OF YOUR RECEIPT OF THIS LETTER IN ORDER TO BE ELIGIBLE FOR CONSIDERATION."*

Guadalupe Lopez wrote a letter in response on June 14, 1995. Ms. Lopez apologized for the violations and explained that her son had been home from school visiting at the time and had not been properly trained. Ms. Lopez also noted that she had no explanation for Mr. Pena's actions, but that he was aware that his actions were not allowed under the program and unacceptable to Chavez Meat Market. Ms. Lopez pointed out that neither she nor her husband had known of Pena's actions and that the store had received no benefit as a result of them. Finally, Ms. Lopez wrote:

I realize that this explanation doesn't change what has occurred and that we are guilty of negligence. But I can assure you that we have taken the following steps to prevent this from ever happening again.

1. We have had a meeting of all the staff and explained again the regulations of the food stamps program.

2. We're in the process of translating the regulations into the Spanish Language so it will be fully understood by all of our employees and future employees.

3. We have fully explained to our children the regulations of the food stamp program.

---

**1.** Trafficking "means the buying or selling of coupons, ATP cards or other benefit instruments for cash or consideration other than eligible food." 7 C.F.R. § 271.2.

4. We have made it very clear verbally and in writing to all our employees that a violation of these regulations will result in termination of their employment.

I respectfully beg your forgiveness, and ask if our case could possibly be re-evaluated. Perhaps we could be placed on probation for a period of time rather than disqualification of the program.

Ms. Lopez did not submit any documentary evidence of a prevention program with her letter.

On July 10, 1995, the agency wrote to plaintiffs that the field office had evaluated plaintiffs' response and determined that permanent disqualification was appropriate. The agency based this determination in large part on its finding that plaintiffs had not requested the civil money penalty within the ten-day time period and had not provided documentation to justify such a request. This letter also informed plaintiffs of their rights to an administrative review of the agency's actions.

Plaintiffs requested administrative review of the agency's actions and their request was timely received by the Administrative Review Division. On July 26, 1995, plaintiff wrote a letter to the review division stating that she had not understood that she needed to specifically request the civil money penalty in lieu of disqualification. She also stated that she had not understood that, in order to be considered for the money penalty, she also had to enclose copies of all documentation demonstrating the violation prevention policy in use at her store. At this time, plaintiff enclosed copies of all materials which she claimed had been used to train her employees. She also noted that because she had requested an appointment or personal interview in her letter of June 6, 1995, she had assumed that there would be additional personal contact or written correspondence before a final decision was reached concerning her store.

In a letter dated November 2, 1995, the administrative review officer notified plaintiffs that he had completed review of their case. He sustained the initial decisions to permanently disqualify plaintiffs' store from participation in the Food Stamp Program.

On December 6, 1995, plaintiffs filed a complaint with this court seeking review of the agency's decision. Defendants have brought a motion for summary judgment, which has been briefed, argued and submitted for decision.

## II

Plaintiffs argue preliminarily that defendants' motion for summary judgment is premature because plaintiffs have not yet had discovery which they believe may raise genuine issues of material fact. Specifically plaintiffs want to depose the investigating agents on the issue of whether the alleged violations occurred and the issue of entrapment.

Plaintiffs, however, have not presented any facts suggesting that any discovery would be fruitful. Guadalupe Lopez in her declaration nowhere states that the alleged violations did not occur, nor states any facts that suggest entrapment. And notably absent from plaintiffs' papers are any declarations by the employees accused of committing the violations, Alonzo Lopez and Raphael Pena. Plaintiffs have not made a showing sufficient to justify a continuance and order for discovery under Federal Rule of Civil Procedure 56(f).

## III

This court's standard of review of the violations is a trial *de novo*. Plaintiffs' suit for review of the agency action is authorized by 7 U.S.C. § 2023, which provides:

If the store, concern, or state agency feels aggrieved by such final determination, it may obtain judicial review thereof by filing a complaint against the United States.... The suit in the United States district court ... shall be a trial de novo by the court in which the court shall determine the validity of the questioned administrative action in issue....

In this trial *de novo* the burden of proof shifts, and plaintiffs must establish by a preponderance of the evidence that the violations did not occur. *Goodman v. United States*, 518 F.2d 505, 511–12 (5th Cir.1975). On a motion for summary judgment, howev-

er, the moving party retains the burden of showing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(c).

■ As evidence that Chavez Meat Market employees committed the violations of selling ineligible items and trafficking in food stamps, defendants have submitted the administrative record, which includes copies of the investigators' reports. The court may only consider admissible evidence in support of a motion for summary judgment, and plaintiffs object that portions of the administrative record that include the reports are inadmissible hearsay.

These reports are admissible in a summary judgment proceeding as the testimony of the aides who participated in the investigative shopping trips. The agency report for each of the three visits is signed by the aide and bears the following certification: "The facts stated in this declaration are true to my knowledge. If I am called to testify as a witness in my proceeding, I am competent to testify to the matters stated herein. Further declarant sayeth not. I declare under penalty of perjury the foregoing is true and correct." That record is sufficient to shift the burden of rebuttal to the parties who are opposing the summary judgment motion.

■ These reports are also admissible under the "public reports" exception to the hearsay rule, which excepts: "Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth ... (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report ... unless the sources of information or other circumstances indicate lack of trustworthiness." Fed.R.Evid. 803(8). Defendants have submitted with the investigative reports the declaration of Mirito Rosario, the Compliance Officer in Charge for the Oakland office of the compliance branch of the agency, stating that she is the custodian of these official reports, has the originals of these reports in her custody, and that the submitted copies

are true and correct. Neither the reports nor other circumstances indicate a lack of trustworthiness.

■ In opposition to this evidence submitted by the defendants, plaintiffs offer *no* evidence that creates a genuine issue of fact as to the occurrence of these violations. First, Guadalupe Lopez in her letter of June 14, 1995, quoted above, nowhere denies that the sale of ineligible items and trafficking in food stamps occurred as alleged in the agency's June 6, 1995 charge letter.[2] Then in plaintiffs' opposition to this motion they appear again to concede the violations, stating "On their face, the nature of the violations is insignificant and the scope is minimal."

Plaintiffs argue that they did not intend to violate the regulations, and did not know of, approve of, or benefit from the violations. Under the Food Stamp Program, however, none of these circumstances would mitigate the fact of the violations, and therefore none of them create a genuine issue of material fact. First, as part of the program participation agreement, Alfredo Lopez signed a statement accepting responsibility for preventing violations including trafficking, and for violations committed by the firm's employees, new and part-time, paid or unpaid. Second, Congress and the agency intended that even innocent store owners be subject to penalty. The regulation concerning penalties states without qualification that "The FCS regional office shall: (1) Disqualify a firm permanently if: (i) Personnel of the firm have trafficked as defined in § 271.2." 7 C.F.R. § 278.6(e). Congress' intent is also implicit in 7 U.S.C. § 2021(b)(3)(B), which gives the Secretary of Agriculture the discretion to impose monetary sanctions in lieu of disqualification for trafficking despite the existence of mitigating factors, including "evidence that neither the ownership nor management of the store or food concern was aware of, approved, benefited from, or was involved in the conduct or approval of the violation." Congress added the provision for a monetary penalty in 1988, and amended it in 1990.

---

**2.** Though plaintiffs point out that the original charge letter (to which Lopez responded in her

June 14, 1995 letter) did not include the allegation that Alonzo Lopez trafficked in food stamps.

In *R Ranch Market Corp. v. United States,* 861 F.2d 236 (9th Cir.1988) the Court of Appeals held that FCS could not permanently disqualify a store without showing that the store had knowledge of or participated in the predicate violations. That case is not controlling, however, because it was decided before the 1988 and 1990 amendments were effective. It therefore did not consider the Congressional intent evident in the amendments to allow a penalty against even innocent store owners. *Freedman v. United States Department of Agriculture,* 926 F.2d 252, 259–60 (3d Cir.1991).

Having failed to raise genuine issues of fact, plaintiffs in conclusion simply assert that, "The following genuine issues of material fact are therefore in dispute," and then list the events of the violations. This is insufficient:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Fed. R. Civ. Proc. 56(e).

Summary judgment is therefore granted in favor of defendants and against plaintiffs as to the fact of the violations.

# IV

## A. *Standard of Review of the Penalty*

In this circuit, review of a penalty imposed by agency action is governed by two standards. *Wong v. United States,* 859 F.2d 129, 131 (9th Cir.1988). "In determining the validity of the agency action, section 2023 provides that a suit for judicial review 'shall be a trial de novo.' 7 U.S.C. § 2023(a). In reviewing the sanction imposed by the FNS, however, review is under the arbitrary and capricious standard." *Hy Chan Banh v. United States,* 814 F.2d 1358, 1361 (9th Cir. 1987).

Plaintiffs argue that *Wong* and *Banh* are no longer controlling because they were decided before the 1988 and 1990 amendments

to 7 U.S.C. § 2021, and plaintiffs urge this court to instead follow *Ghattas v. United States,* 40 F.3d 281 (8th Cir.1994).

The legislative history of 7 U.S.C. § 2021(b)(3)(B) explains that: "[I]nnocent persons should not be subject to the harsh penalty of disqualification where a store or concern has undertaken and implemented an effective program and policy to prevent violations.... With Secretarial discretion, we can be assured that the punishment will more closely fit the crime." H.R.Rep. No. 828, 100th Cong., 2d Sess., pt. 1, at 28 (1988). The agency promulgated regulations making available the alternative money sanction. The regulations require that a store threatened with disqualification, and desiring the FCS to consider the alternative sanction, notify the FCS within ten days of receiving the agency's charge letter, and include documentary proof of eligibility (i.e. of past and present store policies, procedures, and a compliance training program). 7 C.F.R. §§ 278.6(b)(2)(ii).

The *Ghattas* court held that the FCS' implementation of Congress' directive to make an alternative monetary sanction available was arbitrary and capricious, and that district courts must therefore review the sanction imposed *de novo* rather than under the arbitrary-and-capricious standard. The court said:

> These elaborate requirements may be appropriate to measure the compliance efforts of a two-hundred-store supermarket chain. They seem unsuitable for a one-clerk store in a low income trade area.... Perhaps the general counsel of a supermarket chain could comply with this command in ten days.... We have little doubt that most sole proprietors of small grocery stores would find it virtually impossible to locate and hire an attorney who could master this area of the law and gather and file the necessary materials in ten days. Once again, the FNS regulations dramatically skew the administrative process to the disadvantage of small business. Thus, the agency procedural rule is arbitrary and capricious in that the agency "entirely failed to consider an important

aspect of the problem." *Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983).

*Ghattas,* 40 F.3d at 285–86 (footnote omitted).

This court disagrees. The Food and Consumer Service's implementation of the Congressional directive does not rise to the level of being "arbitrary and capricious" as defined by the United States Supreme Court in the case on which the *Ghattas* court relied:

> The scope of review under the "arbitrary and capricious" standard is narrow and a court is not to substitute its judgment for that of the agency. Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a "rational connection between the facts found and the choice made." *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168, 83 S.Ct. 239, 246, 9 L.Ed.2d 207 (1962). In reviewing that explanation, we must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Bowman Transportation, Inc. v. Arkansas–Best Freight System, Inc.,* [419 U.S. 281, 285, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974) ]; *Citizens to Preserve Overton Park v. Volpe,* [401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971) ]. Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866–67, 77 L.Ed.2d 443 (1983).

The regulations here give store owners ten days to document already existing policies and mail the documentation. While it might be convenient for an owner busy running a store to have more than ten days, there is nothing in the nature of drafting or copying such documents that makes a ten day limit inherently unreasonable, nor therefore the imposition of that limit "a clear error of judgment." If the regulation allowed only one day, presuming that all the required documentation would be extant and available for immediate mailing, then one could conclude that the agency had "entirely failed to consider an important aspect of the problem." As it is, the regulatory scheme is not arbitrary and capricious. The Ninth Circuit cases *Wong* and *Banh* are the appropriate precedent rather than *Ghattas;* this court reviews the sanction imposed by the agency under the arbitrary-and-capricious standard. *See also Ali v. United States,* 904 F.Supp. 915 (E.D.Wis.1995) (reviewing fact of the violation *de novo* but reviewing penalty under arbitrary-and-capricious standard); *Kim v. United States,* 903 F.Supp. 118 (D.D.C.1995); *Commonwealth of Mass. v. United States,* 788 F.Supp. 1267 (D.Mass.1992), *aff'd,* 984 F.2d 514 (1st Cir.), *cert. denied,* 510 U.S. 822, 114 S.Ct. 81, 126 L.Ed.2d 49 (1993).

### B. *The Penalty Imposed*

■ "The FCS regional office shall: (1) Disqualify a firm permanently if: (i) Personnel of the firm have trafficked as defined in § 271.2." 7 C.F.R. § 278.6(e). The agency has discretion to substitute civil money penalties for disqualification *only* if the store timely submits substantial evidence that it had established and implemented an effective compliance policy and program to prevent violations. 7 C.F.R. § 278.6(h)(3)(i). Although the charge letter to plaintiffs advised them of the ten day limit, plaintiffs did not request consideration of a monetary penalty within that time, and did not submit any materials until they applied for administrative review of the field officer's decision, about six weeks later.

Under those circumstances, the agency's decision not to consider monetary penalties and to permanently disqualify plaintiffs from the program was not arbitrary and capricious, but was indeed required by the regulations.

**1232**

Summary judgment is therefore granted in favor of defendants as to the issue of penalty as well.

IT IS SO ORDERED.