Charles KIM, Plaintiff–Appellant,

v.

UNITED STATES of America,
Defendant–Appellee.

No. 96–55605.

United States Court of Appeals,
Ninth Circuit.

Submitted July 9, 1997.*

Decided Aug. 1, 1997.

---

* The panel finds this case appropriate for submission without argument pursuant to Ninth Cir. R. 34–4 and Fed. R.App. P. 34(a).

James L. Kellner, Torrance, CA, for plaintiff–appellant.

Catherine M. Hikida, Office of United States Attorney, Los Angeles, CA, for defendant–appellee.

Before: CANBY and THOMAS, Circuit Judges, and KING,** District Judge.

THOMAS, Circuit Judge:

This appeal requires us to decide, among other things, whether a grocery store owner may be permanently disqualified from participating in the Food Stamp Program because one of his employees illegally trafficked in food stamps without the owner's knowledge. We hold that he may and affirm the district court's grant of summary judgment upholding the disqualification.

I.

On April 24, 1992, Kim applied as the owner of Jones Market to participate in the Food Stamp Program, a welfare program administered by the Food and Consumer Service ("FCS"), an agency in the Depart-

** Honorable Samuel P. King, Senior United States District Judge for the District of Hawai'i, sitting by designation.

ment of Agriculture, pursuant to the Food Stamp Act (the "Act"). The program allows authorized stores to accept food coupons issued by the Department of Agriculture as payment for food items. However, an authorized grocery store may be fined a civil money penalty or disqualified from participating in the Food Stamp Program for a specified period of time or permanently for violating any of the provisions of the Food Stamp Act or its implementing regulations. *See* 7 U.S.C. § 2021(a), (b); 7 C.F.R. § 278.6(a). Expressly forbidden is "trafficking" in food stamps, that is, the buying or selling of coupons for cash or consideration other than eligible food items. *See* 7 C.F.R. § 271.2 (defining "trafficking" as "the buying or selling of coupons ... for cash").

The FCS conducted a routine investigation of Jones Market between January 20, 1994 and April 19, 1994 to ensure the store was complying with program requirements. FCS investigators visited the store on seven occasions. On two of those occasions, Jones Market employee Sam Price, whom Kim had hired as a bagger and security guard in the wake of the Los Angeles riots, exchanged cash for food stamps. On four of the visits, Jones Market employees accepted food stamps in exchange for a total of eleven ineligible (non-food) items. An identification visit on September 1, 1994 established the identity of these employees as Ki Kim (Kim's wife), a store clerk, and Kim himself.

On May 16, 1995, the FCS sent Kim a charge letter informing him of the results of the investigation and enclosing a copy of the investigation report. Kim appeared in person at the Los Angeles field office on May 24, 1995 to respond to the charges. He stated he had no idea trafficking was occurring in his store. He said that Price was just a bagger and security guard and was not permitted to work behind the cash register. Kim also stated that the male clerk who sold ineligible items must have been his younger brother, who looks very much like him, because he himself had never sold ineligible items.

The FCS concluded that the trafficking violations had in fact occurred and notified Kim in a July 10, 1995 letter that Jones Market was permanently disqualified from participating in the Food Stamp Program. The letter informed Kim that his request for a civil money penalty in lieu of permanent disqualification had been denied because he failed one of the conditions necessary to receive such relief-he had not had in place an effective policy and program to prevent violations before the trafficking occurred.

On July 19, 1995, Kim submitted a timely request for review of the determination to refuse to impose a civil money penalty in lieu of permanent disqualification. Among other points, he argued that he had never before been the object of any FCS disciplinary action; that his store had a firm policy against the sale of ineligible items and the exchange of coupons for cash, a policy of which all his employees, including Price, were expressly made aware; that Price engaged in the trafficking without Kim's knowledge and entirely for his own benefit, using his own money and pocketing the coupons, presumably to feed his ten children; that Price no longer worked at Jones Market, so there was no danger of any future trafficking; and that permanently disqualifying Jones Market would impose a hardship on its customers who participate in the Food Stamp Program because the nearest comparable market, one which offers fresh meat and produce, is over a half-mile away.

The FCS granted Kim's request for review, but upheld its initial determination. It indicated that Kim had not requested a civil money penalty in lieu of permanent disqualification within the ten-day time limit for doing so, and never submitted any documentation in support of that possibility, so that option was not considered. The FCS also noted that a civil money penalty in lieu of permanent disqualification cannot be imposed solely on the basis of hardship to households who are customers of the subject store.

II.

█ Any grocery store fined or disqualified under the Food Stamp Act may bring an action for judicial review challenging the penalty by filing a complaint against the United

States in federal district court. 7 U.S.C. § 2023(13). The court will determine the validity of the penalty in a "trial de novo." *Id.* § 2023(15); *Wong v. United States,* 859 F.2d 129, 132 (9th Cir.1988). A trial de novo is a trial which is not limited to the administrative record-the plaintiff "may offer any relevant evidence available to support his case, whether or not it has been previously submitted to the agency." *Redmond v. United States,* 507 F.2d 1007, 1011–12 (5th Cir.1975). *See also Sims v. United States Dep't of Agriculture Food & Nutrition Serv.,* 860 F.2d 858, 862 (8th Cir.1988) ("district court 'must reach its own factual and legal conclusions ... and should not limit its consideration to matters previously appraised in the administrative proceedings'") (internal quotation marks omitted) (quoting *Ibrahim v. United States,* 834 F.2d 52, 53–54 (2d Cir.1987)). The burden is placed upon the store owner to prove by a preponderance of the evidence that the violations did not occur. *Plaid Pantry Stores, Inc. v. United States,* 799 F.2d 560, 563 (9th Cir.1986). *See also Warren v. United States,* 932 F.2d 582, 586 (6th Cir.1991) (citing *Goodman v. United States,* 518 F.2d 505, 507 (5th Cir.1975)).

Kim sought judicial review of the FCS's decision pursuant to 7 U.S.C. § 2023(a). The district court granted the FCS's motion for summary judgment, and Kim timely appealed.

### III.

■ The first issue presented by this appeal is whether a store owner may be permanently disqualified from the Food Stamp Program when, unknown to him, one of his employees trafficked in food stamps. This is not the first time we have encountered this question. In *R Ranch Market Corp. v. United States,* 861 F.2d 236 (9th Cir.1988), we held that under then-existing law, the FCS was required to demonstrate the owner's actual or constructive knowledge of the employee's trafficking before permanently disqualifying the owner from participating in the Food Stamp Program. In *R Ranch,* we struck down a regulation that permitted disqualification without requiring proof that the employees acted on behalf of the ownership

or management, writing that "[t]he sanction of permanent disqualification is a draconian penalty, and we are reluctant to infer that Congress intended to impose such a sanction on an unknowing employer absent a clear indication that such was Congress' intent." *Id.* at 239.

That clear indication came in 1988, when Congress amended the Food Stamp Act to permit the FCS to impose a civil money penalty in lieu of permanent disqualification for trafficking violations. Prior to the amendment, the FCS had no discretion regarding what penalty to impose upon finding a trafficking violation-7 U.S.C. § 2021(b) mandated permanent disqualification, even for a first offense. *See generally Ghattas v. United States,* 40 F.3d 281, 283–84 (8th Cir. 1994). Even were it disposed to do so, the FCS lacked the authority to impose any lesser punishment, such as a civil money penalty. *See, e.g., Grocery Town Market, Inc. v. United States,* 848 F.2d 392, 395 (3d Cir.1988). This harsh sanction was Congress's reaction to the increased incidence of trafficking violations under the more lenient penalty provisions in effect prior to 1982. S.Rep. No. 97–504, at 63 (1982), *reprinted in* 1982 U.S.C.C.A.N. 1641, 1701.

By 1988, however, Congress receded somewhat from this hard-line stance, recognizing that

[t]he permanent disqualification of retail food stores upon the first trafficking offense-without any evaluation of preventive measures taken or complicity in the trafficking-seems excessively harsh....

. . . .

A retail food store or wholesale food concern which has an effective policy and program to prevent trafficking should not be presumptively disqualified from participation in the Food Stamp Program due to the unauthorized or expressly prohibited acts of store personnel....

. . . .

[I]nnocent persons should not be subject to the harsh penalty of disqualification where a store or concern has undertaken and implemented an effective program and policy to prevent violations....

With [FCS] discretion, we can be assured that the punishment will more closely fit the crime.

H.R.Rep. No. 100–828, at 27–28 (1988). Congress therefore amended the Act in 1988 to permit the FCS to impose a lesser sanction on certain store owners whose personnel engaged in trafficking violations. Amended several times more since then in ways unimportant to our analysis, the Act now requires permanent disqualification upon the first instance of trafficking, except that

the [FCS] shall have the discretion to impose a civil money penalty of up to $20,000 for each violation ... in lieu of [permanent] disqualification ..., for [a trafficking violation] if the [FCS] determines that there is substantial evidence that such store or food concern had an effective policy and program in effect to prevent violations of [the Act] and the regulations[.]

7 U.S.C. § 2021(b)(3)(B) (1988).

The 1988 amendments to the Act and their accompanying legislative history unmistakably evidence Congress's intent to impose permanent disqualification as a penalty for trafficking even where the store owner had no knowledge of and did not benefit from the trafficking. That Congress amended the Act in 1988 to provide for sanctions less severe than permanent disqualification for innocent store owners who have in place an effective policy to prevent trafficking violations leads ineluctably to the conclusion that innocent store owners whose stores lack such a policy remain subject to permanent disqualification. Every court that has addressed the issue has so held. *See Bakal Bros., Inc. v. United States,* 105 F.3d 1085, 1088 (6th Cir.1997) ( ["7 U.S.C. § 2021(b)(3)(B) ] clearly permits FCS to impose a sanction-either permanent disqualification or a civil money penalty-on an 'innocent' store owner for trafficking by employees."); *TRM, Inc. v. United States,* 52 F.3d 941, 945 (11th Cir.1995) ("We conclude that Congress would not have provided a [civil money penalty] as an alternative to permanent disqualification for innocent owners had it not felt that innocent owners could be disqualified under the Food Stamp Act."); *Freedman v. United States Dep't of Agriculture,* 926 F.2d 252, 259 (3d Cir.1991) ("The

fact that the civil money penalty was to be imposed only if it is determined that a store owner had an effective policy to prevent violations clearly indicates that Congress intended 'innocent' store owners to be subject to the penalties authorized by section 2021(b) of the Food Stamp Act as amended in 1988."). *See also Corder v. United States,* 107 F.3d 595, 597 (8th Cir.1997) ("The legislative history [of the 1988 amendments] clarified that innocent store owners are liable, while recognizing the need for a less harsh [than permanent disqualification] monetary sanction in some cases[.]").

In light of the 1988 amendments to the Act, which post-dated *R Ranch, R Ranch* is no longer viable as to actions commenced under the 1988 amendments. Accordingly, we must join our unanimous sister circuits in holding that 7 U.S.C. § 2021(b) allows the FCS to disqualify even innocent owners permanently from participation in the Food Stamp Program for trafficking violations. Accordingly, Kim's argument that the FCS may not penalize him as an innocent store owner fails. This is a harsh and perhaps unfair result, but one commanded by the 1988 amendments and the accompanying regulations.

## IV.

■■■ Kim's permanent disqualification does not violate his Fifth Amendment substantive due process rights. Where a fundamental right is not implicated, as in this case, governmental action need only have a rational basis to be upheld against a substantive due process attack. *United States v. Alexander,* 48 F.3d 1477, 1491 (9th Cir.1995). "If a statute is not arbitrary, but implements a rational means of achieving a legitimate governmental end, it satisfies due process." *Id. See also Patel v. Penman,* 103 F.3d 868, 874 (9th Cir.1996) (to establish a violation of substantive due process, "a plaintiff is ordinarily required to prove that a challenged government action was 'clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare.' ") (quoting *Euclid v. Ambler Realty Co.,* 272 U.S. 365, 395, 47 S.Ct. 114, 120, 71 L.Ed. 303 (1926)), *cert. denied,* —— U.S. ——,

117 S.Ct. 1845, 137 L.Ed.2d 1048 (1997); *Kawaoka v. City of Arroyo Grande,* 17 F.3d 1227, 1233 (9th Cir.1994) ("Legislative acts that do not impinge on fundamental rights or employ suspect classifications are presumed valid, and this presumption is overcome only by a 'clear showing of arbitrariness and irrationality.' ") (quoting *Hodel v. Indiana,* 452 U.S. 314, 331–32, 101 S.Ct. 2376, 2386–87, 69 L.Ed.2d 40 (1981)). The government need not state its purposes at the time it acts. It is sufficient that the government could have had a legitimate reason for acting as it did. *Halverson v. Skagit County,* 42 F.3d 1257, 1262 (9th Cir.1994).

Congress mandated permanent disqualification in an effort to decrease the frequency of trafficking violations. *See* S.Rep. No. 97–504, at 63–64 (1982), *reprinted in* 1982 U.S.C.C.A.N. 1641, 1701–02 ("[T]he Committee adopted a stringent requirement that a store would be permanently disqualified upon a disqualification based on trafficking.... These increased penalties are designed to provide the deterrence for those stores which might be inclined to violate the law."). *See also* H.R.Rep. No. 100–828, at 27 (1988) ("This is a strict policy. Sale of food stamps at a discount price or trading food stamps for non-food items is a serious offense. It violates the purpose of the food stamp program and harms needy food stamp families."). Clearly permanently disqualifying store owners guilty of intentionally trafficking in food stamps is rationally related to the legitimate goal of reducing the instances of trafficking violations. The question in this case is whether such a severe punishment may be visited upon innocent store owners whose employees engage in trafficking violations for their own benefit and without the owner's knowledge or consent. We believe it may.

Congress believed that punishing innocent employers for the misdeeds of their employees would create a powerful incentive for employers to guard against illegal or improper conduct. It hardly deserves mention that employers are in a much better position vis a vis the FCS to police their employees' daily compliance with the Act's requirements and observance of its proscriptions. As one court has noted, "[t]he imposition of liability on innocent store owners for their employees' trafficking violations ... promotes the prophylactic implementation of employee-training procedures and encourages store owners to supervise their agents." *TRM,* 52 F.3d at 947. Congress reasonably believed that promoting these measures would lead to its ultimate goal of fewer trafficking violations. Softening the sanction from permanent disqualification to a civil money penalty for store owners who evidence their efforts to forestall employee misconduct by implementing such employee-training procedures is consistent with this congressional purpose. Permanently disqualifying innocent store owners who lack an effective program or policy to prevent trafficking violations therefore survives rational basis scrutiny because it fulfills the legitimate governmental objective of promoting adoption of such effective programs or policies. *See Pacific Mut. Life Ins. Co. v. Haslip,* 499 U.S. 1, 14, 111 S.Ct. 1032, 1040, 113 L.Ed.2d 1 (1991) ("Imposing liability without independent fault deters fraud more than a less stringent rule. It therefore rationally advances the [government's] goal."). Both courts that have addressed the question have agreed with this analysis. *See TRM,* 52 F.3d at 945–47 (finding 7 U.S.C. § 2021(b)(3)(B) satisfies substantive due process); *Holmes v. United States,* 868 F.Supp. 1348, 1354–55 (M.D.Ala. 1994) (same), *aff'd,* 67 F.3d 314 (11th Cir. 1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1674, 134 L.Ed.2d 777 (1996).

■ Nor were Kim's procedural due process rights infringed. A trial de novo, in which the existence of a violation is examined afresh, and the parties are not limited in their arguments to the contents of the administrative record, satisfies the strictures of procedural due process. *See TRM,* 52 F.3d at 944 ("the provision of a de novo hearing in the district court adequately protects an aggrieved store owner's procedural due process rights"); *Haskell v. United States Dep't of Agriculture,* 930 F.2d 816, 820 (10th Cir. 1991) (the lack of an evidentiary hearing at the administrative level is not a denial of due process where there is de novo review in the district court); *Ibrahim,* 834 F.2d at 54 ("trial de novo provision clearly afforded full procedural due process"); *Broad Street Food*

*Market, Inc. v. United States,* 720 F.2d 217, 221 (1st Cir.1983) (due process satisfied by trial de novo on the finding of a violation); *Redmond,* 507 F.2d at 1011–12 ("By providing the aggrieved food store with a new trial where the store may introduce evidence outside the administrative record, the statute also protects the rights and interests of the store against final adverse action without the opportunity for an adversary hearing.").

## V.

■ We do not find summary judgment was improper because the FCS failed to consider the hardship that would befall Kim's customers who participate in the Food Stamp Program if they are unable to use their food coupons at Jones Market.

The Food Stamp Act allows the FCS to impose a civil money penalty in lieu of disqualification on the basis of hardship to the customers of the subject store:

> Any approved retail food store or wholesale food concern may be disqualified for a specified period of time from further participation in the food stamp program, *or subjected to a civil money penalty of up to $10,000 for each violation if the [FCS] determines that its disqualification would cause hardship to food stamp households,* on a finding . . . that such store or concern has violated any of the provisions of [the Act] or the regulations issued pursuant to [the Act]. . . .

7 U.S.C. § 2021(a) (emphasis added). The FCS, however, has interpreted the Food Stamp Act as forbidding the imposition of a civil money penalty in lieu of a permanent disqualification on the basis of hardship to food stamp households. 7 C.F.R. § 278.6(f)(1). The one court to have examined this regulation post–1988 disagreed with this interpretation, finding an "unambiguous [congressional] mandate" that hardship to food stamp households be a factor in determining whether to impose a civil money penalty instead of permanent disqualification. *Ghattas,* 40 F.3d at 284–85.

When reviewing an agency's construction of a statute it administers, the crucial inquiry is

> whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; . . . [but] if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). An agency's interpretation of a statute will be upheld unless arbitrary, capricious, or manifestly contrary to the statute. *Id.* at 844, 104 S.Ct. at 2782. *See also* 5 U.S.C. § 706(2)(A). In this case, Congress did not expressly speak to whether hardship to food stamp households is relevant in determining whether to impose a civil money penalty in lieu of permanent disqualification for a trafficking violation. However, we believe the structure of 7 U.S.C. § 2021 fairly compels the FCS's interpretation, at least in regard to trafficking violations.[1]

First, 7 U.S.C. § 2021(a) generally provides for a civil money penalty of "up to $10,000 for each violation" instead of a period of disqualification if food stamp households would suffer hardship from a store's inability to accept their food coupons. However, section 2021(b)(3)(B) has its own specific provision allowing a civil money penalty in lieu of permanent disqualification for trafficking violations of "up to $20,000 for each violation." Generally speaking, as between two potentially applicable statutory provisions, the one that is more specifically applicable to the situation at hand trumps the one that applies more generally. *Security Pac. Nat'l Bank v. RTC,* 63 F.3d 900, 904 (9th Cir.1995), *cert. denied,* — U.S. —, 116 S.Ct. 1316, 134 L.Ed.2d 470 (1996). Moreover, the difference in the monetary limits suggests the provisions are mutually exclusive. If up to a $20,000 fine may be imposed for each trafficking violation, trafficking violations cannot be contemplated by section 2021(a), which

---

**1.** The validity of this regulation in connection with a permanent disqualification imposed for non-trafficking violations is not before us, and we express no opinion on that question.

limits the fine to a maximum of $10,000 per violation.

■ Second, and more importantly, in the case of a trafficking violation, Congress allowed a civil money penalty to be imposed in lieu of permanent disqualification only if certain express requirements are met. *See* 7 U.S.C. § 2021(b)(3)(B). The existence of hardship to food stamp families as a result of the permanent disqualification is not included among these. However, hardship is listed as the *deciding* factor in whether to impose a civil money penalty instead of a period of disqualification in section 2021(a). "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Tang v. Reno,* 77 F.3d 1194, 1197 (9th Cir.1996) (quoting *INS v. Cardoza–Fonseca,* 480 U.S. 421, 432, 107 S.Ct. 1207, 1213, 94 L.Ed.2d 434 (1987)).

In fact, *not* adopting the FCS's interpretation and according weight to food stamp household hardship in determining whether to impose a civil money penalty or permanent disqualification could result in ignoring Congress's "unambiguous mandate." *Ghattas,* 40 F.3d at 285. We do not believe, for instance, that the FCS could impose a civil money penalty in lieu of permanent disqualification for a trafficking violation where the store did not have in effect an effective policy and program to prevent violations, even if food stamp households would suffer horrendous hardship from the disqualification. Such a result would violate the express language of section 2021(b)(3)(B). It would also be at cross-purposes to Congress's intent to deny a civil money penalty where the store meets and exceeds the requirements listed in section 2021(b)(3)(B) because no hardship would result to food stamp households from a permanent disqualification. Despite the obvious merit of considering hardship to food stamp households in the section 2021(b)(3)(B) calculus, the statute cannot be construed to permit one in connection with trafficking violations.

Because it is a reasonable interpretation, indeed, the only permissible interpretation under the Act, we defer to the FCS's interpretation of 7 U.S.C. § 2021 as prohibiting imposition of a civil money penalty in lieu of permanent disqualification for a trafficking violation on the basis of hardship to food stamp households.

## VI.

■ We reject Kim's other constitutional and case-specific claims. Permanent disqualification pursuant to 7 U.S.C. § 2021(b)(3)(B) is not an excessive fine prohibited by the Eighth Amendment because it is not cash or in kind payment directly imposed by, and payable to, the government. *See Austin v. United States,* 509 U.S. 602, 609–10, 113 S.Ct. 2801, 2805–06, 125 L.Ed.2d 488 (1993); *Browning–Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.,* 492 U.S. 257, 268, 109 S.Ct. 2909, 2916, 106 L.Ed.2d 219 (1989).

■ The congressional grant of authority to the executive branch in 7 U.S.C. § 2021(b)(3)(B) was not an unconstitutional delegation of its legislative power. The Food Stamp Act contains detailed standards guiding the FCS's implementation of the Act and enforcement of its penalty provisions. Kim criticizes the phrase "substantial evidence" (the quantum of evidence of an effective policy or program to prevent trafficking violations the FCS must find before it may impose a civil money penalty in lieu of permanent disqualification) as ambiguous. However, this term can be meaningfully defined. *See, e.g., In re Transcon Lines,* 89 F.3d 559, 564 (9th Cir.1996) ("Substantial evidence means more than a mere scintilla but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.").

■ Kim also failed to raise a genuine issue of material fact precluding summary judgment. He asserted both in an affidavit submitted to the district court in opposition to summary judgment and in his brief on appeal that Price never trafficked in food stamps, relying solely upon Price's denial. Because the affidavit was not based on personal knowledge and because it relied on inadmissible hearsay testimony, the district

court properly rejected it. *See Keenan v. Allan*, 91 F.3d 1275, 1278 (9th Cir.1996) (affidavit in opposition to summary judgment must be based on personal knowledge); *Anheuser–Busch, Inc. v. Natural Beverage Distribs.*, 69 F.3d 337, 345 n. 4 (9th Cir.1995) (inadmissible hearsay cannot be used to defeat summary judgment).

We need not decide whether the ten-day time limit imposed by 7 C.F.R. § 278.6(b)(2) on submitting documentary evidence to support a request for a civil money penalty in lieu of permanent disqualification is invalid. Although this argument received a cursory mention by Kim, he does not address this issue in his briefing, and we decline to reach it. *See American Int'l Enterprises, Inc. v. FDIC*, 3 F.3d 1263, 1266 n. 5 (9th Cir.1993) ("Issues raised in the brief that are not supported by argument are deemed abandoned.").

## CONCLUSION

We hold that the Food Stamp Act and the regulations promulgated thereunder at issue in this case are valid, constitutional and enforceable against Kim. The district court properly granted summary judgment. Each party will bear its own costs.

**AFFIRMED.**