**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

LEONARD TRAFICANTI, d/b/a LT's
Gas/Snaks,
<u>Plaintiff-Appellant,</u>

v.

No. 99-1478

UNITED STATES OF AMERICA,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the Eastern District of North Carolina, at Wilmington.
James C. Fox, District Judge.
(CA-98-95-7-F)

Argued: June 8, 2000

Decided: September 8, 2000

Before WILKINSON, Chief Judge, and WIDENER
and TRAXLER, Circuit Judges.

_____

Affirmed and remanded by published opinion. Chief Judge Wilkinson
wrote the majority opinion, in which Judge Traxler joined. Judge
Widener wrote a concurring opinion.

_____

**COUNSEL**

**ARGUED:** Marcus W. Trathen, David Kushner, BROOKS, PIERCE,
MCLENDON, HUMPHREY & LEONARD, L.L.P., Raleigh, North
Carolina, for Appellant. Neal Irving Fowler, Assistant United States
Attorney, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Janice

McKenzie Cole, United States Attorney, Anne M. Hayes, Assistant United States Attorney, Raleigh, North Carolina, for Appellee.

_____

**OPINION**

WILKINSON, Chief Judge:

This case involves statutory and constitutional issues arising from LT's Gas/Snaks' permanent disqualification from the federal food stamp program. Leonard Traficanti, d.b.a. LT's Gas/Snaks, seeks to overturn the district court's grant of summary judgment in favor of the United States. The district court affirmed an agency decision disqualifying LT's from participating in the food stamp program. The agency also imposed a civil penalty of $40,000 should Traficanti ever sell or transfer his business. Traficanti appeals these rulings on a variety of grounds. Finding no merit in his claims, we affirm the dismissal of his suit.

I.

Leonard Traficanti is the owner and operator of LT's Gas/Snaks, a convenience store in Wilmington, North Carolina. Traficanti participates in the food stamp program, run by the Food and Nutrition Service (FNS) of the United States Department of Agriculture. In July of 1996, the Department of Agriculture launched an undercover operation to determine whether either the owner or the employees of LT's were trafficking in food stamps. The investigation determined that on four separate occasions, an employee of LT's, Rachel White, illegally trafficked in food stamps by exchanging cash for food coupons.

White admitted to a friend of Traficanti's that she had engaged in illegal food stamp transactions. Allegedly, White was upset with Traficanti because he made her take a polygraph test to determine if she was stealing from the store. White bought food stamps illegally in order "to have something over" Traficanti if she ever had to "get even" with him. Traficanti fired White soon after his friend informed him of these allegations. Traficanti also telephoned the FNS on October 29, 1997, "as soon as" he learned about White's comments.

2

On October 27, 1997, the Agriculture Department issued a Charge Letter against Traficanti. The letter stated that the government was contemplating disqualifying LT's from the food stamp program due to the four instances of unlawful trafficking. The letter also informed Traficanti that he was eligible for a civil money fine in lieu of permanent disqualification if he could show by substantial evidence that LT's had an effective policy and program to prevent such violations. The letter referred Traficanti to the applicable federal regulations, and stated that he must provide the required documentation in order to avoid disqualification and qualify for the civil fine.

Traficanti responded that White was not acting within the scope of her employment, that she was intentionally trying to sabotage Traficanti, and that LT's in no way sanctioned, encouraged, or benefitted from the fraud. One week later, the FNS permanently disqualified LT's from participating in the food stamp program. The FNS also rejected Traficanti's request to convert the permanent disqualification into a fine. It determined that Traficanti did not show by substantial evidence that an effective fraud prevention program was in effect. See 7 C.F.R. § 278.6(i) (2000). The FNS also imposed a $40,000 civil money penalty should Traficanti transfer or sell his business. See 7 C.F.R. §§ 278.6(f)(2), 278.6(g). Traficanti appealed his disqualification to an FNS administrative review officer. The officer denied Traficanti's appeal.

Traficanti sought review of this decision in district court. See 7 U.S.C. § 2023(a)(13) (1994). The district court granted summary judgment for the United States, holding that Traficanti was strictly liable for his employee's actions. The court also rejected Traficanti's procedural and substantive due process claims with regard to LT's permanent disqualification. The district court then dismissed the constitutional claims stemming from the $40,000 transfer penalty because they were not ripe. Traficanti now appeals.

II.

The food stamp program allows qualified stores to accept food stamps instead of cash for certain food items. The store can then redeem the stamps for their cash value. See 7 U.S.C. §§ 2011 et seq. An approved store may be disqualified from participation or be sub-

3

ject to fines if it violates the governing regulations. See 7 U.S.C. § 2021(a). In 1988, Congress amended the Food Stamp Act to provide guidelines to determine the appropriate punishment when an owner violates the program. Disqualification is permanent upon the first instance of purchasing or trafficking in food stamps unless the Agriculture Department determines by "substantial evidence" that the store had "an effective policy and program in effect to prevent violations." 7 U.S.C. § 2021(b)(3)(B). If the store can show such a policy, as well as its non-involvement in the trafficking, the Secretary may impose a fine in lieu of disqualification. See id.

The Agriculture Department promulgated four criteria to determine whether a store qualifies for the fine. First, a store must show that it had an effective compliance policy; second, its compliance program must have been in effect prior to the violations; third, a store must have developed and instituted an effective personnel training program; and fourth, the store's ownership or management must not have been involved in the fraud. See 7 C.F.R.§ 278.6(i). A store must provide written documentation proving that it had such a policy and program before the violations. See id. at § 278.6(i)(1) & (2).

If the store is permanently disqualified, a civil money penalty "shall" be imposed if the store's ownership sells or transfers its business. Id. at § 278.6(f)(2). The amount of the penalty is based upon the store's average monthly redemptions of food stamps, with a maximum penalty of $10,000 for each violation. See id. at 278.6(g).

III.

A.

Traficanti contends that he committed no violation of the statute because he is merely an innocent owner. He thus argues that he should be subject to no penalty. Traficanti further maintains that strict liability should not apply in this instance, where the employee's specific intent in committing the fraud was to harm the unwitting employer.

We disagree. Traficanti concedes that his employee, White, violated the Act by exchanging food stamps for cash. Congress

4

addressed the subject of unknowing owners in the 1988 amendments to the Food Stamp Act. These amendments allow the FNS to consider the owner's knowledge in deciding whether to impose disqualification or a monetary fine. See 7 U.S.C. § 2021(b)(3)(B); 7 C.F.R. § 278.6(i).

Consequently, Congress specifically intended that all owners be subject at least to some penalty, regardless of fault. The circuit courts that have examined the question agree that penalties attach to the owner, regardless of fault. See Kim v. United States, 121 F.3d 1269, 1273 (9th Cir. 1997) (listing cases). Congress chose such a strict liability regime in order to ensure that the person in the best position to prevent fraud -- the owner -- had sufficient incentive to stop wayward employees from stealing from the government. It is not the place of the judiciary to disregard the guidelines set by Congress. Even assuming Traficanti's ignorance of the violations, the statutory scheme dictates that he face the consequences for his employee's criminal behavior.

Traficanti maintains that the failure to consider evidence of fault violates his Fifth Amendment right to procedural and substantive due process. Even assuming arguendo that a procedural due process violation existed at the administrative level, the de novo hearing in the district court cured the violation. See Kim, 121 F.3d at 1274; TRM, Inc. v. United States, 52 F.3d 941, 944 (11th Cir. 1995).

No violation of substantive due process occurred either. The penalty need only serve a rational legislative basis in this instance, since no fundamental right is implicated. See Kim, 121 F.3d at 1273. A strict liability regime places ultimate economic responsibility for fraud on the owner, who is in the best position to deter deception ex ante. Moreover, the statute allows leniency if owners can show that they took certain affirmative measures to stop the fraud before it happened. Given these factors, we hold that the statute's strict liability regime is rationally related to the government's interest in preventing fraud. See also Pacific Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 14 (1991) ("Imposing liability without independent fault deters fraud more than a less stringent rule. It therefore rationally advances the State's goal.").

5

B.

Traficanti argues in the alternative that even if the store is strictly liable, the correct penalty is a fine instead of permanent disqualification.

Again, we disagree. Traficanti's permanent disqualification from the food stamp program is well within the bounds of agency discretion. Indeed, his permanent disqualification is mandated by the statute itself. Congress specifically required innocent owners to show that an effective anti-fraud program existed in order to qualify for the monetary fine in lieu of disqualification. See 7 U.S.C. § 2021(b)(3)(B) (the Secretary can impose a fine only if "there is substantial evidence that such store or food concern had an effective policy and program in effect to prevent violations" of the food stamp program). As the Ninth Circuit noted, the FNS is not at liberty to "impose a civil money penalty in lieu of permanent disqualification for a trafficking violation where the store [does] not have in effect an effective policy and program to prevent violations . . . . Such a result would violate the express language of section 2021(b)(3)(B)." Kim, 121 F.3d at 1276.

Traficanti had the opportunity to present evidence that he conducted an effective training program to combat food stamp fraud. He submitted no documentation to show that he met the four criteria mandated by the regulations. See 7 C.F.R.§ 278.6(i). Store owners cannot simply attest to having effective anti-fraud programs; rather, they must prove it. Traficanti fell well short of meeting the standards of the statute or the regulations. The FNS decision not to convert the permanent disqualification into a fine was mandated by statute.**1**

_____

**1** Our concurring colleague urges that we reconsider the standard of review adopted by this court in Cross v. United States, 512 F.2d 1212 (4th Cir. 1975) (en banc). There is no need to debate the standard of review here because it makes no difference in this case. The underlying violation of the statute is uncontested, and thus a de novo review of the facts unnecessary, since Traficanti concedes that Rachel White, his employee, trafficked in food stamps while employed at LT's.

The application of a de novo standard of review with respect to the imposition of a sanction also makes no difference here. The agency's

6

C.

Traficanti next argues that the $40,000 transfer penalty is unconstitutional because it violates substantive due process, the Takings Clause, the Double Jeopardy Clause, and the Excessive Fines Clause. These arguments are without merit.**2**

_____

mandate from Congress is not discretionary. The FNS must find that store owners are permanently disqualified if owners cannot prove by substantial evidence that they had an effective program to prevent future violations. See id. at §§ 2021(b); 2021(b)(3); 2021(b)(3)(B) ("[D]isqualification . . . shall be . . . permanent upon . . . the first occasion . . . of a disqualification based on the purchase of coupons or trafficking in coupons . . . except that the Secretary shall have the discretion to impose a civil money penalty . . . if the Secretary determines that there is substantial evidence that such store or food concern had an effective policy and program in effect to prevent violations of the chapter and the regulations."); see also id. at § 2021(e)(1) (transfer penalty "shall be" imposed on disqualified stores). It is undisputed that Traficanti did not submit any documentation that he had a compliance policy or training program in place. Thus, he failed to prove by "substantial evidence" that the store had "an effective policy and program in effect to prevent violations." 7 U.S.C. § 2021(b)(3)(B). Notwithstanding the concurrence's invitation to obviate the result here, see Post at 12 and n.4, neither the agency nor this court is at liberty to disregard the clear congressional judgment embodied in the statute.

Whatever force our fine concurring brother's argument might have in another context, it is unnecessary to a resolution of this case. Here, the facts are uncontested and the legal principles that follow are statutorily mandated. This is not a matter of a standard of review but rather of giving effect to plain statutory text.

**2** The district court did not consider the claims regarding the transfer penalty because it found that they were not ripe. We believe, however, that the claims are ripe. In Arch Mineral Corp. v. Babbitt, 104 F.3d 660, 665 (4th Cir. 1997), this court relied upon a two-part test to determine ripeness: 1) are the issues fit for judicial review, and 2) will hardship fall upon the parties by withholding court consideration?

With regard to the first prong, an issue is fit for judicial review if the agency rule is final and not dependent on future uncertainties. In Arch Mineral the court held that a claim was ripe even though the agency

The penalty does not violate Traficanti's right to substantive due process because it has a rational basis: preventing illicit transfer of ownership in order to evade the sanctions of the statute. If no transfer penalty were imposed, Traficanti could nominally sell his business while retaining de facto control over the enterprise. Since the transfer fee is not clearly arbitrary or irrational, it satisfies the strictures of substantive due process. See Hodel v. Indiana, 452 U.S. 314, 331 (1981).

The penalty is not an unconstitutional taking either. Traficanti argues that the regulation wipes away "all economically beneficial or productive use" of his store. Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1015 (1992). Traficanti has not presented evidence as to why his assertion is true. The regulation does not prevent Traficanti from selling his land to any person; Traficanti must pay the transfer penalty, not the prospective purchaser. A post-sale penalty assessed against Traficanti simply does not negate all economically beneficial use of LT's.

The penalty does not violate the Double Jeopardy Clause. The disqualification and the transfer penalty are not criminal sanctions, and therefore the Double Jeopardy Clause is inapplicable. Permanent dis-

_____

decision was not officially final. It was final in actuality, however, because no "`further administrative action'" was required "`other than the possible imposition of sanctions.'" Id. at 668 (citing Northeast Airlines, Inc. v. CAB, 345 F.2d 662, 664 (1st Cir. 1965)). In this case, the agency retains no discretion once Traficanti attempts to sell his business. See 7 C.F.R. § 278.6(f)(2) (the person selling the retail store "shall be subjected to and liable for a civil money penalty") (emphasis added). No future uncertainty exists as to the imposition of the penalty.

The second prong asks whether hardship will fall upon the parties by withholding court consideration. In this case, the potential sanction is not some far-removed event, barely noticed on the horizon. On the contrary, Traficanti has alleged that he has attempted to sell his store on three different occasions. All possible sales collapsed due to the looming transfer penalty. The subsequent owner of LT's cannot participate in the food stamp program until Traficanti pays the fine. See 7 C.F.R. § 278.6(f)(4). The combination of the agency's lack of discretion to enforce the civil money penalty combined with Traficanti's unrefuted allegation that he is trying to sell the store makes this case ripe for adjudication.

8

qualification is a prophylactic measure, not a criminal penalty. See Cross v. United States, 512 F.2d 1212, 1217 (4th Cir. 1975) ("[D]isqualification from the food stamp program is not a criminal sanction."). Moreover, since Congress labeled the transfer fee a civil penalty, "only the clearest proof" that the sanction's effect is punitive can transform the penalty into a criminal one. See Hudson v. United States, 522 U.S. 93, 99-100 (1997) (internal quotation marks omitted). No such proof exists in this case. Since neither the disqualification nor the transfer penalty is a criminal sanction, both are outside the scope of the Double Jeopardy Clause.

Finally, Traficanti alleges that the transfer penalty violates the Excessive Fines Clause. This argument is without merit. The fine is not "grossly disproportional to the gravity of the defendant's offense." United States v. Bajakajian, 524 U.S. 321, 337 (1998); see also Vasudeva v. United States, -- F.3d --, 2000 WL 744072 at *4 (9th Cir. June 12, 2000) (rejecting argument that $40,000 fine by the FNS violates the Excessive Fines Clause).**3**

IV.

We do not underestimate the seriousness of the sanction in this case. However, Congress' foremost concern was to deter widespread fraud in food stamp transactions. Congress determined that the store owner is in the best position to prevent fraud in the food stamp program. Therefore, it placed the financial onus on owners to prevent the fraud before it occurs. Because Traficanti could not show that he maintained an effective anti-fraud program, the statutory penalty is

_____

**3** Traficanti argues in the alternative that two of the violations cannot be attributed to his store. Therefore he asks us to reduce the penalty from $40,000 to $20,000. We decline to do so. With regard to Traficanti's claim that White was not in the store during one violation, we believe that it makes no difference in this situation. She was near the front door of the store, and she was in the employ of LT's at that particular time. We also reject Traficanti's claim that he should not be liable for one of the violations because in that instance, White was just a broker. Traficanti presented no evidence that this was the case. The record indicates only that an undercover agent entered LT's with $460 in stamps, and left LT's with $210 in cash. This evidence in itself is enough to establish that an employee of LT's bought food stamps.

9

permanent disqualification. The transfer penalty is likewise constitutional. For the foregoing reasons, we remand the case with instructions to the district court to dismiss it with prejudice.

AFFIRMED AND REMANDED

WIDENER, Circuit Judge, concurring:

Although I concur in the result because of circuit precedent, I write separately to express my continuing doubt with the arbitrary and capricious standard of review established by this court's divided decision in Cross v. United States, 512 F.2d 1212, 1217-19 (1975) (en banc), and applied by the district court in this case. In Cross, this court ignored the language of the Food Stamp Act, 7 U.S.C. §§ 2011 et seq. (1996), and held that "de novo " does not mean de novo. Rather, in this circuit, de novo review by a district court of penalties imposed[1] under the Food Stamp Act means a district court is limited to the arbitrary and capricious standard generally used in administrative review. See Cross, 512 F.2d at 1218 ("To be `valid,' a sanction must not be arbitrary and capricious, and a sanction is arbitrary and capricious if it is unwarranted in law or without justification in fact."). With this proposition, I do not agree.

The Food Stamp Act mandates de novo review by a district court. The Act states that "[t]he suit in the United States district court . . . shall be a trial de novo by the court in which the court shall determine the validity[2] of the questioned administrative action in issue, except that judicial review of determinations . . . made pursuant to section 2025(c) . . . shall be a review on the administrative record." 7 U.S.C. § 2023(a)(15) (1996) (emphasis added). Thus, the plain language of the Act requires de novo review. In addition, the § 2025(c) exception indicates and emphasizes that Congress intended a de novo hearing in

_____

[1] Interestingly, a district court reviews the finding of liability according to the plain language of the statute--under a de novo standard of review. See Cross, 512 F.2d at 1218 ("[T]he scope of review of a sanction is not as broad as the scope of review of the fact of violations.").
[2] When the district court determines that the administrative action is invalid, it is free to enter a judgment or order in accordance with the law and the evidence. See 7 U.S.C. § 2023(a)(16) (1996).

all cases, except when specifically limited to a lesser standard of review under the Act.**3** Any judicially created limit on a district court's power of review, like that created in <u>Cross</u>, thus defeats this expressed intent of Congress. Moreover, because an"administrative action" under 7 U.S.C. § 2023(a)(15) must consist both of the finding of a violation <u>and</u> the punishment of that violation, I think, contrary to the <u>Cross</u> decision, that the Act mandates <u>de novo</u> review on both the finding of guilt and the sanction that is imposed. See <u>Ghattas v. United States</u>, 40 F.3d 281, 287 (8th Cir. 1994) (conducting <u>de novo</u> review on liability as well as sanction).

This full right of review would have allowed the district court to make its own independent judgment as to the severity of Traficanti's permanent disqualification in light of the factual findings. Significantly, the district court noted that Traficanti did not have knowledge of or benefit from the illegal acts of his employee, Rachel White, Traficanti fired White upon learning of the illegal acts, and White was aware that food stamp trafficking was illegal. Most importantly, the district court found that White vengefully committed the illegal acts with the intent to cause harm to Traficanti. Cf. <u>R Ranch Market Corp. v. United States</u>, 861 F.2d 236, 239 (9th Cir. 1988), <u>superceded by statute</u> 7 U.S.C. 2021(b) (1988 amendment) (stating that "courts should not abandon their traditional function of giving very close scrutiny to situations involving the tortious or criminal actions of employees" and not holding employer liable because employer did not know of employee's trafficking). <u>R Ranch Market</u> for that principle followed <u>Bodwin v. United States</u>, 541 F.2d 1388 (10th Cir. 1976).

Moreover, <u>de novo</u> review would have given the district court power to evaluate Traficanti's sanction and whether his failure to produce sufficient documentation of a compliance program must lead to permanent disqualification. See 7 U.S.C. § 2021(b)(3)(B); 7 C.F.R. § 278.6(i). In this respect, because a compliance program will not deter or stop a disgruntled employee from intentionally setting up her employer, a district court could evaluate whether the compliance program requirements are applicable at all when an employee violates the law with the intent to sabotage her employer. The district court should

_____

**3** This exception applies to payment accuracy programs and is not applicable in this case.

also determine how to treat these situations under the Act. In short, de novo review, as intended under the Act, would have given the district court flexibility to address this issue of first impression and to avoid the harsh outcome that inevitably results from the application of the Cross standard in a case such as this. Cf. Sims v. United States Dep't of Agriculture Food & Nutrition Serv., 860 F.2d 858, 863 (8th Cir. 1998) (holding district court should have reduced sanction under Food Stamp Act); Ghattas v. United States, 40 F.3d 281, 287 (8th Cir. 1994) (conducting de novo review on liability as well as sanction under Food Stamp Act); United States v. Acosta , 17 F.3d 538, 544 (2d Cir. 1994) (illustrating harsh result under Federal Food, Drug, and Cosmetic Act, 9 U.S.C. § 331, where liability attaches without proof of intent).**4**

In sum, we continue to decline to give effect to the plain words "trial de novo" as found in § 2023(a)(15) of the statute.

In United States v. First City Nat'l. Bank, 386 U.S. 361, 368 (1967), the Court defined the clause "shall review de novo the issues presented." It reasoned that "The words `review' and `trial' might conceivably be used interchangeably. The critical words seem to be `de novo' and `issues presented.' They mean to us that the court should make an independent determination of the issues." First City Nat'l Bank, 386 U.S. at 368 (emphasis added). The words at issue in the case at hand are that the suit in court to review penalties such as those imposed in this case "shall be a trial de novo by the court in which the court shall determine the validity of the questioned administrative action in issue." 7 U.S.C. § 2023(a)(15). The penalties are certainly a part of "the administrative action in issue," yet we persist in giving little or no effect to the words "the court shall determine"

_____

**4** The majority, fn. 1, finds undisputed that Traficanti did not submit any documents that he had a compliance policy or training program in place. It is equally undisputed, I suggest, that no policy or training program can prevent such a disgruntled employee from setting up her employer and in so doing, in all likelihood, committing a felony. See 7 U.S.C. § 2024(b)(1). If the courts in this circuit were not forbidden by our own precedent from making a de novo determination of penalty they could obviate the harsh and unjust result obtained here, as the cases I have cited from other circuits demonstrate.

12

(emphasis added). Our continued insistence on not giving effect to either the statute's words or the Supreme Court's definition is something I cannot justify. In my opinion, we should revisit Cross, follow the principle of Ghattas v. United States, 40 F.3d 281, 287 (8th Cir. 1984), and remand this case to the district court.

13