ZIYAD MINI MARKET, Plaintiff,

v.

UNITED STATES, Defendant.

No. 03–CV–6150L.

United States District Court,
W.D. New York.

Dec. 11, 2003.

Paul J. Vacca, Jr., Rochester, NY, for Plaintiff.

Brian M. McCarthy, U.S. Attorney's Office, Rochester, NY, for Defendant.

## DECISION AND ORDER

LARIMER, District Judge.

Plaintiff, Ziyad Mini Market ("Ziyad"), filed the complaint in this action on March 31, 2003, seeking review of a determination by the Food and Nutrition Service ("FNS") of the United States Department of Agriculture, permanently disqualifying plaintiff from participating in the Food Stamp Program ("the Program"). Defendant has moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## BACKGROUND

In a letter dated October 29, 1999, FNS notified Ziyad that it had determined that Ziyad should be permanently disqualified from participating in the Program because Ziyad had violated federal regulations relating to the Program. Complaint ¶ 9. Following administrative review, plaintiff filed a lawsuit in this Court challenging that determination on November 16, 1999. *Ziyad Mini Market v. United States ("Ziyad I")*, 99–CV–6568. The lawsuit was

eventually settled on terms favorable to Ziyad.

On June 22, 2000, the parties entered into a stipulation of settlement dismissing *Ziyad I.* The stipulation provided, *inter alia,* that Ziyad would be disqualified from the Program for two years, beginning June 28, 1999, at the end of which period FNS would consider whether plaintiff should be authorized to participate in the Program. *See* Stipulation and Order ¶¶ 1(a), 1(e).[1]

The stipulation also stated that, in the event that plaintiff were reauthorized, Ziyad would be placed on probation for two years. In addition, the parties agreed that "[i]f an inspection during this period of probation reveals any violation of the Food Stamp Act of 1977, as amended, 7 U.S.C. §§ 2011–29, committed by any principal or employee of the plaintiff, plaintiff agrees (1) to a penalty applicable, by regulation, to the violation; [and] (2) to waive its right to an administrative or judicial review of such penalty ...." Stipulation and Order ¶ 1(g).

Following plaintiff's two-year suspension, Ziyad was reauthorized to participate in the Program. On October 28, 2002, however, during the two-year probationary period, Ziyad's owner, Ziyad Alhojaji, received a letter from FNS stating that an investigation had turned up "evidence that certain violations of the regulations governing the Food Stamp Program ... ha[d] occurred" at Ziyad.[2] The letter also stated that "[b]ecause of the seriousness of these charges, [Ziyad wa]s being considered for disqualification from the Food Stamp Program and/or for the imposition of a civil money penalty."

Two types of violations were alleged: "misuse" of food stamp benefits, and trafficking, *i.e.,* buying or selling food stamps for cash. FNS stated that under the applicable regulations, the misuse charge "warrant[ed] a disqualification period of six months," but that the trafficking charge carried a potential penalty of permanent disqualification. These charges were similar to the ones first raised against Ziyad in 1999.

FNS advised Alhojaji that if he could present "substantial evidence that [Ziyad] had an effective policy and program in effect to prevent violations," Ziyad might be eligible for a civil monetary penalty instead of permanent disqualification. The letter directed Alhojaji to reply in writing within ten days.

In response, Alhojaji sent FNS a letter in which he asserted that the violations had been caused by one of his employees, whom he identified as "Saba." He stated that he had since discovered that Saba had purchased, as a silent partner, part ownership of a competing market located near Ziyad. Alhojaji stated, "I believe that Saba was attempting to destroy my store [by deliberately committing food stamp violations] to gain my business." In an accompanying letter from his attorney, Alhojaji asked that FNS impose a monetary penalty rather than disqualification.

FNS replied to Alhojaji in a letter dated November 13, 2002. The letter stated that FNS had concluded that the alleged violations had occurred at Ziyad, and that Ziyad did not have "an effective policy and program in effect to prevent violations." FNS therefore denied Alhojaji's request

---

1. Unless otherwise noted, all documents quoted in this Decision and Order are attached to the complaint, and may therefore be considered on a motion to dismiss. *Taylor v. Vermont Dep't of Educ.,* 313 F.3d 768, 776 (2d Cir.2002).

2. It appears that the details of the alleged violations were described in certain exhibits to the letter. The parties have not submitted copies of those exhibits.

for a civil monetary payment in lieu of disqualification, and permanently disqualified Ziyad. The letter also stated that FNS's "determination [wa]s not subject to administrative or judicial review" because of the June 22, 2000 stipulation in which Ziyad waived its right to review of any penalty that FNS might impose for a violation occurring during the two-year probationary period.

Plaintiff then sought to appeal the disqualification decision to FNS's Administrative Review Branch. In a letter to plaintiff's attorney dated March 14, 2003, however, the review officer stated, "[B]ased on my review of the stipulation agreement [waiving plaintiff's right to review of any penalty] I consider this case moot and I am closing my file. The decision of the Regional Office to permanently disqualify your client's firm from participation in the Food Stamp Program is the final determination in this matter."

Plaintiff then commenced this action on March 31, 2003. Plaintiff asks the Court to enjoin defendant from disqualifying Ziyad, and to conduct a trial "in which the Plaintiff can be heard and defend itself against the allegations made by the Defendant." Plaintiff also requests that the Court "interpret the Stipulation of Settlement dated June 22, 2000 so as to require a review of this matter, and that it does not anticipate sabotage on the business as occurred in this particular case."

## DISCUSSION

Plaintiff has asked the Court to "interpret and resettle" the parties' June 22, 2000 settlement agreement. There is nothing to interpret, however. The agreement is clear on its face with respect to plaintiff's waiver of its right to review. In fact, the agreement could hardly be plainer in that regard: "plaintiff agrees (1) to a penalty applicable, by regulation, to the

violation; [and] (2) to waive its right to an administrative or judicial review of such penalty ...." Stipulation and Order ¶ 1(g).

Plaintiff does not appear to contend that the waiver itself is invalid or unenforceable, and certainly a knowing and voluntary waiver of one's rights will generally be upheld. *See, e.g., In re Lybarger*, 793 F.2d 136, 137 (6th Cir.1986) (upholding settlement agreement in which parties agreed that court's determination of attorney's fee would be final and the "parties waive all rights of appeal and further review"); *Brown v. Gillette*, 723 F.2d 192, 192–93 (1st Cir.1983) (upholding settlement agreement in which parties stipulated that determinations to be made by district court would be "final and binding" and waiving all appellate rights). Indeed, even in criminal cases, in which courts are particularly careful to safeguard defendants' rights, knowing and voluntary waivers of the right to appeal as part of a plea agreement are "regularly enforced." *United States v. Fisher*, 232 F.3d 301, 303 (2d Cir.2000); *see, e.g., United States v. Brown*, 232 F.3d 44, 48 (2d Cir.2000), *cert. denied*, 532 U.S. 913, 121 S.Ct. 1245, 149 L.Ed.2d 152 (2001); *United States v. Chen*, 127 F.3d 286, 288 (2d Cir.1997); *United States v. Maher*, 108 F.3d 1513, 1531 (2d Cir.1997).

Plaintiff's argument appears to be that, under the terms of the settlement agreement, plaintiff agreed to waive its right to review of "a penalty applicable, by regulation, to the violation ...," and that the penalty imposed here-permanent disqualification-was not applicable to the violations charged. Plaintiff notes that 7 U.S.C. § 2021(b)(2) calls for disqualification "for a reasonable period of time, of no less than twelve months nor more than ten years, upon the second occasion of disqualification ...." Plaintiff's reliance on that provision is misplaced, however, because § 2021(b)(3)(B) provides for permanent

disqualification upon "the first occasion or any subsequent occasion of a disqualification based on the purchase of coupons or trafficking in coupons . . . ," which is one of the violations that FHS found here.

■ Plaintiff also asserts that courts have adopted an "innocent owner" defense where the violation was committed by an employee without the owner's knowledge. That argument is unavailing. For one thing, it has no bearing on the fact that plaintiff knowingly waived his right to judicial or administrative review of the penalty imposed by FHS.

Secondly, "Congress addressed the subject of unknowing owners in the 1988 amendments to the Food Stamp Act," which "allow the FNS to consider the owner's knowledge in deciding whether to impose disqualification or a monetary fine." *Traficanti v. United States*, 227 F.3d 170, 174 (4th Cir.2000). *See* 7 U.S.C. § 2021(b)(3)(B); 7 C.F.R. § 278.6(i). Those amendments do not *require* that a lesser penalty be imposed in such situations, however, but simply give FHS discretion to do so. *See Goldstein v. United States*, 9 F.3d 521, 524 (6th Cir.1993) (holding that innocent owner could be permanently disqualified from food stamp program); *see also TRM, Inc. v. United States*, 52 F.3d 941, 945 (11th Cir.1995) ("We conclude that Congress would not have provided a [civil money penalty] as an alternative to permanent disqualification for innocent owners had it not felt that innocent owners could be disqualified under the Food Stamp Act"); *Kassem v. United States*, No. 02–CV–0546, 2003 WL 21382906, at *3 n. 18 (W.D.N.Y. Apr. 15, 2003) ("it is well-established that a store owner is responsible for *any* violations of the Food Stamp Act and regulations by the store's employees"). Those amendments also overruled the cases relied upon by plaintiff in support of his innocent-owner argument. *See Kim v. United States*, 121 F.3d 1269, 1273 (9th Cir.1997) (recognizing that 1988 amendments had overruled *R Ranch Market Corp. v. United States*, 861 F.2d 236, 238 (9th Cir. 1988)); *Freedman v. United States Dep't of Agriculture*, 926 F.2d 252, 259 n. 11 (3d Cir.1991) (noting that *Badwan v. United States*, 541 F.2d 1388 (10th Cir.1976), was decided prior to amendments to Food Stamp Act which "substantially increased" penalties for trafficking offenses).

Third, as is evident from FHS's November 13, 2002 letter to plaintiff, FHS did consider plaintiff's evidence in support of his request for a monetary penalty in lieu of disqualification, and found it lacking. I see no error in that finding, and, given that finding, plaintiff's "permanent disqualification from the food stamp program is well within the bounds of agency discretion. Indeed, his permanent disqualification is mandated by the statute itself." *Traficanti*, 227 F.3d at 175.

I am equally unpersuaded by plaintiff's contention that the term "principal or employee" in the settlement agreement is ambiguous. There is no dispute that the violations that occurred here were committed by an employee of Ziyad. Alhojaji himself stated at page three of his letter to FHS that when the violations occurred, "Saba [had been] left in charge of the store . . . ." That Saba was allegedly motivated by a desire to "sabotage" Ziyad for reasons of economic self-interest does not change the fact that he was a Ziyad employee at the time.

Furthermore, while plaintiff argues that Saba was acting outside the scope of his employment, that too does not alter the fact that he was an employee. As such, his acts fell within the terms of the settlement agreement, which did not refer to a violation by "an employee acting within the scope of his employment," but to any viola-

128

tion "committed by any principal or employee of the plaintiff ...." Had plaintiff wanted a "sabotage" exception, he could have insisted that one be included in the agreement. He did not.

Plaintiff's quotation of the statement in *In re Joint Eastern and Southern Districts Asbestos Litigation,* 929 F.Supp. 1, 6 (E.D.N.Y.), *aff'd,* 100 F.3d 944 (2d Cir. 1996), that "there must be some discretion in applying a settlement's terms as new conditions require fine-tuning of an ongoing arrangement to meet new conditions or problems revealed in its operation," is also inapposite. This case does not involve an unforeseen problem with the parties' prior settlement agreement itself, or applying that agreement to some unusual situation that was clearly never contemplated by the parties. It is certainly not unheard of for a store employee to commit a food stamp violation for his own personal gain, and without the owner's knowledge. As the previously cited case law makes clear, Congress intended that store owners be held responsible when that occurs. FHS therefore acted well within its discretion in imposing the penalty of permanent disqualification, and plaintiff knowingly waived his right to review of that penalty in any event.

## CONCLUSION

Defendant's motion to dismiss the complaint (Docket # 10) is granted, and the complaint is dismissed.

IT IS SO ORDERED.